THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
MICHAEL BEAVERS, Appellant.

First Department, April 14, 1987

## APPEARANCES OF COUNSEL

*David Yamada* of counsel *(Philip L. Weinstein,* attorney), for appellant.

*Lisa M. Rubin* of counsel *(Jeremy Gutman* with her on the brief; *Mario Merola, District Attorney,* attorney), for respondent.

## OPINION OF THE COURT

SULLIVAN, J.

Convicted of the shooting death of Anthony White outside a poolroom on the evening of December 21, 1983, on the basis of a positive identification of him as the assailant by an eyewitness, who had known him since 1965, defendant does not challenge the sufficiency of the proof of guilt. Rather, he claims, *inter alia,* that the court erred in failing to preclude the People on their rebuttal case from using evidence of collateral matters for the sole purpose of impeaching the defense witnesses' credibility and in failing to give a curative charge on the limited use of such evidence.

At trial, defendant's mother, Mildred Beavers, took the stand in support of his alibi defense. She testified that defendant had not been living with her on December 21, 1983, but had been in her apartment on that date between 7:00 and 11:00 P.M., which encompassed the period when the killing occurred. She stated that defendant had come to her apartment to pick up two kittens for "Antoinette," and that she was able to fix his time of arrival and departure by the air time of certain programs that were on the television. A school crossing guard, she remembered the date because "it was two days before school was going to close before the Christmas holiday." On cross-examination, she denied ever having spoken to a Sergeant Viggiano, ever having told him that she had not seen her son since Thanksgiving and that the last time she had spoken to him was when he telephoned her on Christmas, and ever having told him that defendant might be in Memphis, Tennessee, with a woman named Gwendolyn Newman.

Defendant also called Frank Mazion, allegedly Mrs. Beaver's common-law husband, who corroborated her testimony that defendant was at the apartment from 7:00 to 11:00 P.M. on the night of the shooting. He denied any knowledge of a calendar with the date December 21, 1983 encircled.

On rebuttal, the People recalled Sergeant Viggiano, who

had testified on the People's case as to the circumstances of defendant's arrest on December 29, 1983. According to Sergeant Viggiano, he telephoned Mrs. Beavers on December 27th, and, after identifying himself as a police officer, asked to speak to defendant with respect to an incident which he was investigating. Mrs. Beavers told him that she had not seen defendant since Thanksgiving, although he had telephoned her on Christmas Day, and that she did not know where he was currently living, except that she believed he "had a woman" named Gwendolyn Newman, who, at the time, was somewhere in Memphis, Tennessee. In the course of the conversation, Mrs. Beavers stated that she lived alone.

Although defendant failed to object to Sergeant Viggiano's rebuttal testimony, he now argues that since the officer's testimony dealt with collateral matter it should not have been permitted, even with limiting instructions. According to defendant, Sergeant Viggiano's testimony with respect to these "collateral matters" had only one purpose, namely, the impeachment of his alibi witnesses. While defendant has waived his right to raise this claim on appeal (CPL 470.05 [2]; *People v Dawson*, 50 NY2d 311; *People v Castro*, 101 AD2d 392, 398, *affd* 65 NY2d 683), we find that even if the issue were preserved, reversal would not be warranted since the rebuttal evidence was properly received after an appropriate instruction to the jury. Inasmuch as the issue is a recurring one, we take this opportunity to clarify the circumstances under which testimony such as Sergeant Viggiano offered may be received in rebuttal.

The general rule is that the cross-examiner is bound by the answers of the witness to questions concerning collateral matters inquired into solely to affect credibility. *(People v Pavao*, 59 NY2d 282, 288, citing Richardson, Evidence § 491, at 477 [Prince 10th ed]; *see also, People v Schwartzman*, 24 NY2d 241, 245, *cert denied* 396 US 846.) "It is well established that the party who is cross-examining a witness cannot introduce extrinsic documentary evidence or call other witnesses to contradict a witness' answers concerning collateral matters solely for the purpose of impeaching that witness' credibility." *(People v Pavao, supra*, at 288-289; *accord, People v Zabrocky*, 26 NY2d 530, 535; Richardson, Evidence § 491, at 477 [Prince 10th ed].) As the Court of Appeals has noted, "The collateral evidence rule [rests] upon auxiliary policy considerations of preventing undue confusion of issues and unfair surprise by

extrinsic testimony." *(People v Schwartzman, supra,* at 245, citing 3 Wigmore, Evidence §§ 979, 1002 [3d ed].)

Evidence is not collateral, however, when it is relevant to some issue other than credibility and is offered for the purpose of disproving facts set forth by a witness for the opposing side on direct examination. *(People v Wise,* 46 NY2d 321, 328; *People v Schwartzman, supra,* 24 NY2d, at 246; *People v Galletti,* 55 AD2d 154, 157.)* Parenthetically, it should be noted, this was precisely the substance of the trial court's instruction to the jury, "A rebuttal witness is [one] who is called in order to rebut testimony that has been introduced by the defense and for that purpose only." In *Schwartzman,* the court, after setting forth the rationale underlying the collateral matter rule, went on to limit its scope, explaining: "[T]he objection of confusion of issues is inapplicable if the evidence sought to be introduced is admissible for any purpose other than contradiction. Likewise, it is not unfair to expect a party to refute testimonial errors when the subject of the error is a material issue in the case, for upon such subjects the parties should in any event come prepared. Therefore, the policy objections to the contradiction of a witness' answers are inapplicable if evidence of the fact contradicted would be admissible for any purpose independent of the contradiction. It follows that a fact is not a collateral matter if it could be shown in evidence for any purpose independent of the contradiction" *(supra,* 24 NY2d, at 245-246).

The distinction between matters collateral and those that are not is often imprecise and difficult to draw. *(See, People v Chin,* 67 NY2d 22, 28.) A witness' bias, interest, or hostility is not, however, collateral and may be shown notwithstanding the witness' denial. *(Supra,* at 31; *People v Webster,* 139 NY 73; *People v Brooks,* 131 NY 321; Richardson, Evidence § 491, at 477-478 [Prince 10th ed].) Nor is evidence collateral when it tends to impeach a witness' credibility with respect to the very issues the jury is asked to resolve. *(People v Wise, supra,* 46 NY2d, at 328.)

However arcane the distinction in the abstract, it is clear in this case that Sergeant Viggiano's testimony with respect to the December 27th conversation with Mrs. Beavers was highly relevant to disprove the alibi defense which defendant had attempted to establish through her testimony. The People are permitted to offer evidence in rebuttal of the defense evidence. (CPL 260.30 [7].) Furthermore, they bear the burden of disproving an alibi defense beyond a reasonable doubt. *(People v*

*Jones,* 74 AD2d 515.) Having, on their direct case, established defendant's presence at the murder scene, the People were properly permitted the opportunity to disprove the alibi, his sole defense, on rebuttal.

It was defendant's contention at trial that since he was with his mother and her common-law husband in their Manhattan apartment on the evening of December 21, 1983, he could not have shot Mr. White. A prior inconsistent statement by defendant's mother to the effect that she had not seen him since Thanksgiving was certainly relevant to disproving that defense. Her prior statement to Sergeant Viggiano not only impeached her general credibility but also directly contradicted her testimony and tended to disprove the alibi. Similarly, Sergeant Viggiano's testimony that during that same conversation Mrs. Beavers had informed him that she lived alone was relevant since Mr. Mazion had testified that he spent the evening of December 21, 1983 with defendant in the apartment he shared with Mrs. Beavers. That the challenged evidence also, of necessity, impeached their general credibility does not, ipso facto, render it collateral. Thus, the rebuttal testimony falls outside the proscription of the collateral matter rule.

Defendant points specifically to Sergeant Viggiano's reference to the calendar as constituting testimony about a collateral matter. This testimony was not collateral, however, since it bore on whether the alibi testimony was contrived. To the extent that Sergeant Viggiano's testimony with respect to Mrs. Beavers' comments about Gwendolyn Newman dealt technically with a collateral matter, it was part and parcel of a conversation that was relevant. It should also be noted that defendant never asked for a limiting instruction with respect to any aspect of the rebuttal testimony to the effect that it was being offered solely for the purpose of impeachment. The court did, however, instruct the jury generally on the impeachment of witnesses by evidence of prior inconsistent statements.

Admission of Sergeant Viggiano's testimony plainly did not divert the trial from its search for the truth. Rather, defendant's injection of an alibi defense into the case invited the People to respond to Mrs. Beavers' testimony, which they did, not by an attack on her credibility on collateral matters, as defendant contends, but, rather, by exposing the falsity of the alibi. To permit her account to stand unchallenged would invite any defendant to present, without fear of contradiction,

a fictitious defense through witnesses whose testimony is belied by their earlier statements on the subject. The collateral matter rule was never intended to facilitate such a result. Nor should such a result be tolerated.

Our attention has been called to several decisions in the Second Department which, though factually distinguishable, appear to follow a different approach to the kind of impeachment testimony with which we are concerned, at least where that testimony is offered in rebuttal by the People in criminal cases. *(See, People v Orse,* 91 AD2d 1003, 1004; *People v Allen,* 74 AD2d 640; *People v Tufano,* 69 AD2d 826.) To the extent that these cases would permit alibi testimony to stand uncontradicted by a witness' prior inconsistent statements on the ground that any rebuttal evidence could only be construed as an attack on credibility, which is collateral, we decline to follow them.

We have examined defendant's other contentions and find that they are without merit.

Accordingly, the judgment, Supreme Court, Bronx County (Lawrence Tonetti, J.), rendered December 13, 1985, convicting defendant after a jury trial, of manslaughter in the first degree, and sentencing him to an indeterminate term of imprisonment of from 12½ to 25 years, should be affirmed.

SANDLER, J. P., MILONAS, KASSAL and SMITH, JJ., concur.

Judgment, Supreme Court, Bronx County, rendered on December 13, 1985, unanimously affirmed.