■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DONNA BELL, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Queens County (Posner, J.), rendered January 31, 1985, convicting her of murder in the second degree and burglary in the first degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress certain statements which she made to law enforcement authorities.

Ordered that the judgment is affirmed.

Pursuant to Queens County indictment Number 1333/83, the defendant Donna Bell, her boyfriend Stephen Gagne, and his brother Louis Gagne were charged with acting in concert

in committing two counts of murder in the second degree (intentional and felony murder), and burglary in the first degree. The charges emanate from the death by strangulation of Palmina Bell, the defendant's mother. The homicide was committed during the course of the burglary of the victim's apartment. The apparent motive for the crime was to obtain the victim's bank cards (including an automatic teller machine card), in order to provide the perpetrators access to her accounts which, at that time, contained over $50,000.

Following a hearing on the defendants' motions to suppress certain evidence, the defendants were tried separately. While Louis Gagne was acquitted of all charges, Stephen Gagne was convicted on all counts. The latter judgment was subsequently affirmed by this court (see, People v Gagne, 129 AD2d 808).

The defendant challenges the hearing court's ruling denying that branch of her omnibus motion which was to suppress her statements to the police, contending that the statements were involuntary because at the time of the police interrogation, she was weak, tired, "spaced out" on medication and generally in an emotionally distraught condition. The defendant made essentially three statements at the precinct, the last of which was videotaped. According to the hearing testimony of the interrogating detective and the Assistant District Attorney, the defendant was advised of her Miranda warnings prior to each interview and indicated each time that she understood her rights and was willing to speak without an attorney. During her second statement, the defendant admitted that she had overheard Stephen and Louis Gagne discuss burglarizing her mother's apartment. She nevertheless drove with them to the apartment and remained in the automobile while the Gagne brothers entered the premises. At that time, she stated that when the trio drove away from the scene, Stephen told her that he had killed her mother and threatened to kill her also if she said anything to the police. The interrogating detective recorded this statement in his notebook and the defendant initialed each paper and signed it at the end. She subsequently added further details regarding the clothing worn by the codefendants.

In the course of her videotaped interview with Assistant District Attorney Mark Furman, the defendant provided a detailed narrative and answered all questions coherently and with specificity. Other than an oblique reference at the end of her statement to having been given a Valium at the hospital, the defendant gave no indication that she was under the influence of any type of drug. Stated succinctly, the record

belies any allegation that the defendant's will was so overborne by her claimed physical and emotional impairment as to render her statements involuntary (see, People v Adams, 26 NY2d 129, 137, cert denied 399 US 931).

The defendant's contention that she had a license or privilege to be in her mother's apartment at the time of the crime, and that therefore the People failed to sustain their burden of proving beyond a reasonable doubt the statutory element of unlawful entry (see, Penal Law §§ 140.30, 140.00 [5]) is without merit. The defendant's trial testimony established that she refused her mother's request to come over just hours prior to the incident and that she did not later inform her mother that she had changed her mind and was on her way over. The defendant also testified that when she moved out of her mother's apartment approximately two weeks prior to the murder, her mother changed the lock on the front door of the apartment and did not give her a key. Moreover, the defendant indicated that she had a strained relationship with her mother due to the latter's drinking and abusive conduct toward her daughter. Significantly, the trial testimony established that the victim did not open the door for the trio when they arrived and knocked. Instead, they gained entry by virtue of Stephen Gagne's climbing through a window and thereafter letting the defendant and Louis Gagne enter through the front door.

On this evidence, it cannot reasonably be said that the defendant's entry into her mother's apartment was at a time or in a manner which was authorized. Nor does the record support a conclusion that the defendant had a reasonable, if mistaken, belief that she had such license or privilege to enter the subject apartment (cf., People v Insogna, 86 AD2d 979; People v Barton, 18 AD2d 612). Accordingly, there was legally sufficient credible evidence in the record to support the jury's verdict of the defendant's guilt of burglary in the first degree, and we find no basis to disturb that determination (see, People v Di Girolamo, 108 AD2d 755, lv denied 64 NY2d 1133).

We also reject the defendant's contention that she established an affirmative defense to felony murder. Although the defendant testified at the trial that she was in the apartment and protested when Stephen Gagne announced his intention to kill her mother, then Louis Gagne testified that the defendant encouraged Stephen by telling him to go ahead and that she continued to search for her mother's bank account access card. He also stated that the defendant looked into the bedroom during the commission of the murder but walked by and

poured herself a drink. The prosecution presented further testimony controverting the defendant's assertions that she was frightened of Stephen Gagne at that time. A neighbor of the victim testified that he observed the trio leaving the scene and he described the defendant as smiling and "clowning around" with her codefendants. Police fingerprint experts testified that two prints taken from the side of a wine glass found at the scene were identified as those of the defendant. The credibility of the various witnesses was a matter to be determined by the jury. Viewing the evidence in a light most favorable to the People, we conclude that any rational trier of fact could have found the defendant guilty, as a matter of law, of felony murder and rejected her asserted affirmative defense to that charge *(see, People v Di Girolamo, supra)*. Moreover, upon the exercise of our factual review power we are satisfied that the evidence established the defendant's guilt of both burglary in the first degree and murder in the second degree beyond a reasonable doubt, and that the verdict was not against the weight of the evidence *(see,* CPL 470.15 [5]).

We have reviewed the defendant's remaining contention and find it to be without merit. Thompson, J. P., Weinstein, Eiber and Sullivan, JJ., concur. *[See,* 127 Misc 2d 43.]