■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ARCHIE CLARKE, Appellant.—Judgment, Supreme Court, New York County (Budd Goodman, J.), rendered October 20, 1989, convicting defendant, after a jury trial, of two counts of burglary in the first degree (Penal Law § 140.30 [2], [3]), and sentencing him to concurrent, indeterminate terms of imprisonment of from three to nine years, is affirmed.

During the early morning hours of November 10, 1988, defendant had a violent altercation with Ronald Clarke, his brother, during which he crashed through the latter's locked apartment door and entered through the opening wielding a seven-foot metal bed slat. When Clarke grabbed a broomstick to protect himself, defendant swung the bed slat, breaking the stick in half, and then chased his brother into the kitchen of the apartment. There, as Clarke crouched with his hand over his head and pleaded that he gave up, defendant struck him on the top of the head and left hand with the bed slat.

These events took place in a family-owned building located at 136 West 118th Street, where defendant had an apartment on the third floor, Clarke lived in an apartment on the second floor, and their aunt, who called the police when Clarke fled to her apartment and collapsed on the floor bleeding profusely from his head, lived on the first floor. Two unrelated families also lived in the building.

Indicted for the crimes of burglary in the first degree (two counts), assault in the second degree, and criminal possession of a weapon in the third degree, defendant was found guilty of the burglary charges, but the jury deadlocked on the assault and weapon possession counts, which were later dismissed. On appeal, defendant argues 1) that the evidence was insufficient to establish that he entered his brother's apartment without license or privilege and 2) that he was denied a fair trial by the court's admission of hearsay testimony into evidence.

Our examination of this record persuades us that the counts of burglary in the first degree were proved beyond a reasonable doubt. Initially, we note that the standard for review in a challenge to the legal sufficiency of evidence is whether, when viewed in the light most favorable to the People, " 'there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury * * * and as a matter of law satisfy the proof and burden requirements for every element of the crime charged' " *(People v Thompson,* 72 NY2d 410, 413, quoting *People v Bleakley,* 69 NY2d 490, 495). Of course, issues of credibility are for the triers of fact, whose determination is given great weight on appeal *(People v Loughlin,* 66 NY2d 633, 634; *People v Malizia,* 62 NY2d 755, 757, *cert denied* 469 US 932).

In challenging the sufficiency of his conviction for burglary in the first degree, defendant urges that, because the building was owned by "the family", he had a right to enter Clarke's apartment. However, the record reveals that the building was divided into distinct living units, that Clarke's apartment was one such separate dwelling, and that Clarke, but not defendant, had a key for it. In the circumstances presented, Clarke was entitled to exclude defendant from his individual dwelling unit *(People v Smith,* 144 AD2d 600, 601; *People v Dela Cruz,* 162 AD2d 312, *lv denied* 76 NY2d 892), and it was far from reasonable for defendant to have believed that he was licensed or privileged to enter Clarke's apartment at the time, and in manner, that he did *(see, People v Bull,* 136 AD2d 929, *lv denied* 71 NY2d 966). Indeed, the testimony established that 15 to 20 minutes before defendant smashed in the door, Clarke had chased him from the apartment with a kitchen knife and locked it behind him.

This record amply supports a finding that Clarke's intention to exclude defendant from the apartment was clear and emphatic, and that any prior license or privilege were shown to have been withdrawn *(see, People v Powell,* 58 NY2d 1009, 1011). Clarke's testimony that defendant forced his way into

the apartment, which the jury obviously credited over defendant's (who testified that, after Clarke left, he smashed things in the apartment and then continued his rampage by going out into the hallway and kicking in the *unlocked* door from the outside) is sufficient in itself to establish that defendant neither had, nor believed he had, permission to enter *(see, People v Bell,* 131 AD2d 859, 861, *lv denied* 70 NY2d 749).

With respect to defendant's claim that the admission of hearsay testimony of an Assistant District Attorney was error, we hold that defense counsel's general "exception" did not preserve the claim raised on appeal *(see,* CPL 470.05; *People v Osuna,* 65 NY2d 822, 824; *People v Beavers,* 127 AD2d 138, 140, *lv denied* 70 NY2d 642), and decline to consider it in the interest of justice. Were we to do so, we would find that any error in the admission of this testimony must, in light of the overwhelming evidence of defendant's guilt, be deemed harmless *(see, People v Crimmins,* 36 NY2d 230, 238). Concur—Ellerin, J. P., Asch and Kassal, JJ.

Smith, J., dissents in a memorandum as follows: The trial court committed reversible error when an Assistant District Attorney (ADA) was permitted to give rebuttal testimony concerning a statement allegedly made by the defendant to a police officer. The ADA was not present when the statement was made. I therefore dissent.

Defendant was convicted of two counts of burglary in the first degree. Count One charged that on November 10, 1988, the defendant knowingly entered and remained unlawfully in the dwelling of Ronald Clarke and while in the dwelling, caused physical injury to Ronald Clarke. Count Two charged that on the same date defendant knowingly entered and remained unlawfully in the dwelling of Ronald Clarke and while in the dwelling, he threatened the immediate use of a dangerous instrument, a metal bed slat.

The complainant, who was the defendant's brother, and the defendant gave differing accounts of the events. The complainant, Ronald Clarke, who was then forty-three years of age, testified that during that day he had drunk wine, drunk rum and smoked crack. At the time of the incident he was "aware" but not fully aware. He and his thirty-four year old brother, the defendant, had been to a birthday party for their mother in the Bronx.

The two had had a dispute on the way home and the complainant was beaten by the defendant. Nevertheless, the two continued home. Two women were waiting when they

arrived and all four persons went to the complainant's room on the second floor of the brownstone. The defendant's room was on the third floor. The complainant smoked "crack" cocaine in his apartment that night.

While they were in the second floor room, an argument occurred over a camera that was missing. Defendant had apparently borrowed the camera from someone else and had taken it to his mother's party. Defendant wanted the complainant to go out and help him look for the camera and the complainant refused. The two traded punches and the complainant chased the defendant from his room with a knife. The complainant then locked the door. A few minutes later, the defendant returned, kicked in a panel of the door and entered with a metal bed slat. Complainant grabbed a broom handle which was broken when the defendant hit it with the bed slat. Although the complainant tried to concede, the defendant struck him in the head causing injury.

The defendant testified and gave a different story. He stated that he grabbed the bed slat in the complainant's room when the complainant advanced towards him with a knife. He struck the complainant in self defense. After the complainant ran out of the room, defendant, upset, kicked the door. Defendant also testified that sometime prior to the incident, the complainant had made a "plywood dent" in the door so he (complainant) could get in when he did not have a key.

During the People's direct case Police Officer Claude Irish testified that while defendant was in a patrol car, he volunteered that the complainant took his camera. Defendant went up to his room to get it. The complainant said come and get it. The defendant kicked in the door. The complainant grabbed a stick and defendant grabbed a bed pole. The complainant dropped the stick and said he did not want to fight. The defendant then "clocked" him with the metal pole.

When he testified, the defendant denied that he had made the statement. As to the testimony by Officer Irish, the following colloquy occurred between the Assistant District Attorney at the trial and the defendant:

"Q. Could you answer my previous question. Are you suggesting that Police Officer Irish made up the details of your statement after November 10?

"A. I am saying I didn't say it.

"Q. So he is making it up?

"A. Yes, he is."

After the defendant had rested, the ADA (trial assistant)

stated that he wanted to call another ADA "in order to rebut a claim of recent fabrication," that is, that Officer Irish had recently made up the statement. When the court protested that testimony by an ADA as to what Irish had told him (the ADA) was said by defendant in the patrol car was double hearsay, the ADA (trial assistant) replied that it was not hearsay since the statement amounted to admissions by the defendant. ADA Robert Scher was then permitted to testify about what Police Officer Irish had told him about defendant's statement in the patrol car.

Prior to the offer of proof, the defense attorney sought to make a comment but was cut off by the court. Following the court's ruling, made without affording the defense attorney an opportunity to argue, the defense attorney asked for and received an "exception" to the court's ruling. While "exceptions" are no longer necessary to preserve a defense objection to a ruling (CPL 470.05 [2]), the actions by the defense attorney and the court were sufficient to preserve the objection.

The testimony of ADA Scher about a statement made by defendant to Officer Irish in the patrol car, a statement made when ADA Scher was not present, was not in rebuttal to anything, was hearsay and was prejudicial. It lent the weight of an Assistant District Attorney to the testimony of Officer Irish when the ADA had not been present at the time the defendant's statement was allegedly made. Moreover, the error was compounded when the court told the jury what the testimony could be used for. The court did state that the testimony could not be used to establish or to aid in the establishment of truth. The court also stated, however, that the statement could be used on the issue of the credibility of the defendant. In other words, the testimony was not used to assess the credibility of Police Officer Irish but the credibility of the defendant.

The admission of this testimony was error.