*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  January 22, 2015                    104484
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                    Respondent,

         v                                      MEMORANDUM AND ORDER

ALBERT J. RIVERA, Also Known
    as A.J. RIVERA,
                    Appellant.
_____

Calendar Date:   November 14, 2014

Before:   Lahtinen, J.P., McCarthy, Egan Jr. and Devine, JJ.

_____

         Eugene P. Grimmick, Troy, for appellant.

         Joel E. Abelove, District Attorney, Troy (Kelly L. Egan of
counsel), for respondent.

_____

Egan Jr., J.

         Appeal from a judgment of the County Court of Rensselaer
County (Jacon, J.), rendered June 17, 2011, upon a verdict
convicting defendant of the crime of manslaughter in the second
degree.

         Defendant was indicted and charged with murder in the
second degree, criminal possession of a weapon in the second
degree and two counts of criminal possession of a weapon in the
third degree in connection with the October 2005 shooting death
of the victim in the City of Troy, Rensselaer County.  The
shooting occurred in a dead-end alley that ran behind the
residence where the victim then was living, and the victim was
found lying on the ground near a white sport utility vehicle that

was parked in the alley.  Following a jury trial, defendant was convicted as charged and sentenced to a lengthy period of incarceration.[1]  Upon appeal, this Court reversed defendant's murder conviction based upon County Court's failure to submit to the jury the lesser included offense of manslaughter in the second degree, remitted the matter for a new trial as to that count and otherwise affirmed (70 AD3d 1177 [2010]).  Following a second trial, defendant was convicted of manslaughter in the second degree and thereafter was sentenced as a second felony offender to a prison term of 7½ to 15 years followed by five years of postrelease supervision and was ordered to pay restitution.  This appeal by defendant ensued.

Initially, we reject defendant's assertion that County Court abused its discretion in failing to reopen the Huntley hearing.  Although "an order following a suppression motion made pursuant to CPL article 710 ordinarily will be [binding in a subsequent trial]" (People v Evans, 94 NY2d 499, 504-505 [2000]), "[a] trial court may reopen a pretrial hearing if it 'is satisfied, upon a showing by the defendant, that additional pertinent facts have been discovered by the defendant which he [or she] could not have discovered with reasonable diligence before the determination' of his [or her] pretrial application" (People v Fuentes, 53 NY2d 892, 894 [1981], quoting CPL 710.40 [4]; see People v McDonald, 82 AD3d 1125, 1126 [2011], lv denied 19 NY3d 964 [2012]).  Inasmuch as defendant's motion here was premised entirely upon events that allegedly occurred at the time that he was initially questioned by law enforcement, i.e., events to which defendant could have testified or otherwise brought to light at the initial Huntley hearing, we do not find that County Court abused its discretion in denying defendant's motion to reopen (cf. People v Thompson, 118 AD3d 822, 823 [2014], lv granted ___ NY3d ___ [Dec. 18, 2014]).

---

[1]  Derrick Rosa also was charged in the same indictment with various weapons-related crimes for having obtained the gun used in the shooting.  Rosa ultimately pleaded guilty to attempted criminal sale of a firearm and was sentenced to time served and five years of probation.

Nor are we persuaded that the Assistant District Attorney abused his discretion in refusing to grant immunity to Charles Smith, whom the police discovered at the scene minutes after the shooting. At the start of the trial, and outside of the presence of the jury, Smith appeared and invoked his right against self-incrimination, whereupon County Court inquired as to the People's position with respect to immunity. The Assistant District Attorney indicated that the People were unwilling to confer immunity upon Smith at that time "[b]ecause he could be charged as an accomplice, an accomplice to murder" — a representation that both defense counsel and Smith's attorney strenuously disputed.

Pursuant to CPL 50.30, a prosecutor is vested with the discretion to confer "full transactional immunity" upon a witness appearing on behalf of either the People or the defendant (People v Adams, 53 NY2d 241, 247 [1981]). Although the exercise of such discretion "is reviewable for abuse if, for instance, the prosecutor builds his [or her] case with immunized witnesses but denies the defendant a similar opportunity" (id. at 247; see People v Owens, 63 NY2d 824, 825-826 [1984]; People v Swank, 109 AD3d 1089, 1090 [2013], lv denied 23 NY3d 968 [2014]), we discern no abuse of that discretion here. Notably, and contrary to defendant's assertion, "[t]he absence of current charges against the witness with respect to the subject of the proposed testimony does not establish bad faith on the part of the prosecutor" (People v Owens, 63 NY2d at 826).

Defendant's claim that the People failed to exercise diligent efforts to secure the testimony of an out-of-state witness is equally unavailing. Pursuant to CPL 670.10 (1), a trial court may "allow into evidence the testimony of a witness given at a prior trial if the witness is outside the state and cannot with due diligence be brought before the court" (People v Diaz, 97 NY2d 109, 112 [2001]; see People v Arroyo, 54 NY2d 567, 569-570 [1982], cert denied 456 US 979 [1982]; People v Grice, 84 AD3d 1419, 1420 [2011], lv denied 17 NY3d 806 [2011]; People v Hilts, 46 AD3d 947, 948-949 [2007], affd 13 NY3d 895 [2009]). Here, the witness in question contacted the Rensselaer County District Attorney's office and advised an Assistant District Attorney that she had moved to Washington and was not interested

in returning to New York to testify at defendant's subsequent trial. The witness declined to provide a current address or phone number and, when briefly placed on hold, ended the phone call. Although the witness's mother also declined to provide any information regarding her daughter's whereabouts, the People were able to locate an address for the witness in Washington and successfully applied to County Court for a material witness order. When a member of the local sheriff's department in Washington attempted service, however, the deputy found the premises to be vacant and was advised by the landlord that the witness had left in the middle of the night approximately six weeks earlier. When the People again attempted to locate the witness through her mother, who resided in Clinton County, they discovered that the mother's phone had been disconnected. Subsequent efforts were made by both local and Washington state law enforcement officials and investigators to locate the witness through various databases, including the Department of Motor Vehicles and social media sites, all to no avail. County Court ultimately determined that the People exercised diligent efforts to locate the witness in question, and we discern no basis upon which to set aside that finding (see People v Hilts, 46 AD3d 947 at 949; compare People v McDuffie, 46 AD3d 1385, 1385-1386 [2007], lv denied 10 NY3d 867 [2008]). Notably, and as found by County Court, nothing in the record suggests "that the prosecutor's failure to produce [the subject witness] was . . . due to indifference or a strategic preference for presenting her testimony in the more sheltered form of [a trial transcript] rather than in the confrontational setting of a personal appearance on the stand" (People v Arroyo, 54 NY2d at 571).

As for defendant's challenges to County Court's various Molineux rulings, "evidence of uncharged crimes or prior bad acts may be admitted where they fall within the recognized Molineux exceptions — motive, intent, absence of mistake, common plan or scheme and identity — or where such proof is inextricably interwoven with the charged crimes, provide[s] necessary background or complete[s] a witness's narrative" (People v Johnson, 106 AD3d 1272, 1274 [2013], lvs denied 21 NY3d 1045, 1045, 1046 [2013] [internal quotation marks and citations omitted]; accord People v Brown, 114 AD3d 1017, 1019 [2014]) and, further, "the trial court . . . determines that the probative

value of such evidence outweighs its prejudicial effect" (People v Brown, 114 AD3d at 1019). Here, defendant takes issue with the fact that two of the witnesses who testified as to the circumstances surrounding either his acquisition or display of a gun on the night in question also made references to certain drug-related activity. Upon reviewing the transcript, we agree with County Court that such testimony provided necessary context/background information or otherwise completed the relevant witness's narrative. Upon balancing the probative value of such testimony vis-a-vis its prejudicial effect, we conclude that this testimony was properly admitted into evidence. We reach a similar conclusion regarding testimony offered relative to a structure fire, which the Troy fire chief labeled as arson, that occurred one week before and near the scene of the shooting. Such testimony plainly went to defendant's possible motive for committing the crime, i.e., that the victim could implicate him in setting the fire (see note 2, infra) and, on balance, was properly admitted.

Turning to defendant's claim that his conviction was against the weight of the evidence, upon viewing the evidence in a neutral light and granting appropriate deference to the jury's credibility determinations (see People v Bleakley, 69 NY2d 490, 495 [1987]), we cannot say that the jury failed to accord the evidence its proper weight. Various witnesses placed defendant near the scene of the shooting immediately before it occurred, and multiple witnesses described defendant as carrying a gun earlier that evening. Certain witnesses also observed an individual walking away from the scene of the shooting wearing clothing substantially similar to that described by other witnesses as the clothing worn by defendant earlier that day. Additionally, at least two witnesses testified that defendant — either expressly or tacitly — admitted that he had participated in the shooting,[2] and multiple witnesses testified as to

_____

[2] One witness testified that, when he asked defendant "if he did it," defendant "look[ed] at [him], winked and just shushed [him]" because other people were in the room. Another witness testified that, shortly after the shooting occurred, he ran into defendant at a local hospital, at which time defendant indicated

statements made by defendant that reasonably could be interpreted as evidencing his involvement therein.[3]  Admittedly, certain contradictions and inconsistencies existed in the proffered testimony, and some of the People's witnesses either had prior criminal convictions, were allowed to plead to reduced charges in exchange for their testimony or had made previous statements that contradicted their testimony at trial.  All of these issues, however, "were fully explored during cross-examination and, in the final analysis, posed credibility questions for the jury to resolve" (People v Malak, 117 AD3d 1170, 1174 [2014], lv denied ___ NY3d ___ [Dec. 4, 2014]; see People v Desmond, 118 AD3d 1131, 1133 [2014], lv denied 24 NY3d 1002 [2014]; People v Forbes, 111 AD3d 1154, 1157-1158 [2013]).  Upon viewing such evidence in its totality, we do not find defendant's conviction to be against the weight of the evidence.

Finally, defendant contends that he was deprived of a fair trial by virtue of the prosecutor's summation.  We do not agree. Initially, we note that virtually all of the now challenged comments were unaccompanied by a contemporaneous objection at trial, thereby rendering defendant's arguments in this regard

---

that "he was being investigated for a murder."  Defendant then mentioned the victim's name and said, "we did it" or "I did it." This witness further testified that he recalled defendant indicating that the shooting had "something to do about a fire that was set and [the victim] was going to sign a statement on him."

[3]  For example, one witness testified that defendant appeared at his house approximately 30 minutes after the shooting and asked "if she was dead or alive."  This same witness, who could place defendant in the alley near the time of the shooting, also testified that defendant advised him "not to say anything that [he] knew to the police" and indicated — in an apparent reference to the shooting — that "it wasn't supposed to happen like that."  Another witness testified that while she was talking with defendant in the alley that night, defendant noticed a familiar white vehicle and remarked that "he should go down there and shoot them."

unpreserved for our review (see People v Ormsby, 119 AD3d 1159, 1161 [2014], lv denied 24 NY3d 963 [2014]; People v VanVorst, 118 AD3d 1035, 1037 [2014]).  In any event, the challenged statements — in large measure — either constituted fair comment on the evidence or were a fair response to comments made by defense counsel in her closing and, viewing the summation as a whole, we do not find "that the prosecutor engaged in a flagrant and pervasive pattern of prosecutorial misconduct so as to deprive [defendant] of a fair trial" (People v Green, 119 AD3d 23, 30 [2014], lv denied 23 NY3d 1062 [2014] [internal quotation marks and citations omitted]).  Defendant's remaining contentions, including his assertion that the People improperly altered their theory of liability and that the sentence imposed is harsh and excessive, have been examined and found to be lacking in merit.

Lahtinen, J.P., McCarthy and Devine, JJ., concur.

ORDERED that the judgment is affirmed.

ENTER:

Robert D. Mayberger
Clerk of the Court