█ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LEVON NEWELL, Appellant. [48 NYS3d 800]—

Egan Jr., J. Appeal from a judgment of the County Court of Rensselaer County (Ceresia, J.), rendered October 17, 2012, upon a verdict convicting defendant of the crimes of robbery in the first degree (two counts) and attempted robbery in the first degree (two counts).

Defendant was charged in a multi-count indictment with attempted murder in the second degree, assault in the first degree, two counts of robbery in the first degree (causing serious physical injury), two counts of robbery in the first degree (armed with a deadly weapon), attempted robbery in the first degree (causing serious physical injury) and attempted robbery in the first degree (armed with a deadly weapon). The charges stemmed from an incident that occurred on the evening of October 3, 2011 in the City of Troy, Rensselaer County, during the course of which the two victims—Gary Donnelly and

Denaya Tremont—were forcibly relieved of certain personal property and Donnelly was shot with a sawed-off shotgun wielded by defendant's codefendant, Rahcief Collier. Defendant, who was in the line of fire, also sustained a gunshot wound to his left arm.

Donnelly testified at trial that, on the day in question, he received a text message from Collier, who was looking to purchase some marihuana. The two agreed to meet later that evening. At approximately 9:30 p.m., Donnelly and Tremont arrived at the agreed-upon location in a Jeep Wrangler belonging to Donnelly's aunt and, with the windows to the vehicle rolled down, awaited Collier's arrival. Eventually, another vehicle arrived and two men exited; Collier, armed with what Donnelly described as a sawed-off shotgun, approached the driver's side of the Jeep Wrangler, while the other man—later determined to be defendant—approached the passenger side of the vehicle.[1] Donnelly testified that Collier "put the gun to [Donnelly's] face and told [Donnelly] to give him everything and that he was going to pull the trigger." While this was occurring, defendant was "scrambling to get in to get the [passenger] door opened," whereupon defendant "pulled [Tremont] out" of the vehicle. As Donnelly focused his attention on defendant, who "was just grabbing at anything he could, trying to get something," Collier struck Donnelly in the back of the head with what felt like the butt of the shotgun. In response, Donnelly grabbed the barrel of the shotgun, "gave [Collier] a shove back" and again turned his attention toward defendant. When Donnelly "turned back around" to Collier, Collier fired the shotgun, shooting both Donnelly and defendant, with Donnelly sustaining an injury to his left forearm that resulted in intense pain and profuse bleeding and required two surgeries to repair. According to Donnelly, the items taken from the vehicle included, among other things, his house key and Tremont's cell phone. Tremont's testimony mirrored Donnelly's account of the incident, stating that she was "ripped . . . out of the car" by one of the assailants—again, later determined to be defendant—and that he, in turn, took her cell phone.

Following a jury trial, defendant was convicted of two counts of robbery in the first degree (pertaining to Tremont's cell phone) and two counts of attempted robbery in the first degree

---

1. Neither Donnelly nor Tremont were able to identify defendant as the other perpetrator, but the video recording of defendant's oral statement to the police was introduced into evidence at trial, which implicated him in the charged crimes. Additionally, defendant's own trial testimony placed him at the scene of the crimes with Collier.

(pertaining to certain items belonging to Donnelly). Defendant thereafter was sentenced to 15 years in prison followed by five years of postrelease supervision upon his robbery convictions and 10 years in prison followed by five years of postrelease supervision upon his attempted robbery convictions—said sentences to run concurrently. This appeal by defendant ensued.[2]

Initially, we reject defendant's claim that County Court erred in denying his request for a *Dunaway* hearing. "A motion seeking suppression of evidence must state the ground or grounds of the motion and must contain sworn allegations of fact supporting such grounds" (*People v Desmond*, 118 AD3d 1131, 1133 [2014] [internal quotation marks, ellipsis and citation omitted], *lv denied* 24 NY3d 1002 [2014]). Notably, "[a] hearing in this regard is neither automatic nor generally available simply for the asking" (*People v Briskin*, 125 AD3d 1113, 1117 [2015] [internal quotation marks, brackets and citations omitted], *lv denied* 25 NY3d 1069 [2015]). Here, as County Court aptly observed, no sworn allegations of fact were offered in support of defendant's request; rather, defendant merely asked the court "to determine if in fact the People, and its agents in law enforcement[,] had probable cause to detain, arrest and search defendant and seize tangible property at the time of arrest." Under these circumstances, County Court did not abuse its discretion in denying defendant's request for a *Dunaway* hearing (*see id.* at 1117; *compare People v Mabeus*, 47 AD3d 1073, 1074-1075 [2008]; *People v McNair*, 28 AD3d 800, 800-801 [2006]).

As to the *Huntley* hearing conducted in this matter, "[a]t a hearing to suppress statements made to law enforcement officials, the People have the burden of demonstrating, beyond a reasonable doubt, that the defendant's statements were voluntary and that the defendant knowingly, intelligently, and voluntarily waived his or her *Miranda* rights prior to making the statements" (*People v Johnson*, 139 AD3d 967, 969 [2016] [citations omitted], *lv granted* 28 NY3d 939 [2016]; *see People v Loucks*, 125 AD3d 890, 890 [2015], *lv denied* 25 NY3d 1167 [2015]). "If the People meet their burden, the defendant then bears the burden of persuasion" (*People v Johnson*, 139 AD3d at 969 [citations omitted]; *see People v Brown*, 46 AD3d 1128, 1129 [2007]). "Proof of voluntariness compatible with due process depends upon the particular circumstances—the total-

---

**2.** Collier was tried separately and convicted of numerous crimes, and this Court recently affirmed his conviction (*People v Collier*, 146 AD3d 1146 [2017]).

ity—of each case[, and] [a] court must review all of the surrounding circumstances to see whether the defendant's will has been overborne" (*People v Johnson*, 139 AD3d at 969-970 [internal quotation marks and citations omitted]).

Here, a detective with the Troy Police Department testified that, based upon information identifying Collier as a suspect in the underlying incident and in light of defendant's known association with Collier, a patrol unit initiated a traffic stop of a vehicle in which Collier and defendant, among others, were riding. Following this stop, defendant was asked to step out of the vehicle, which he did, and the detective asked defendant "if he would be willing to come to the police station and talk." The detective testified that defendant, who was not under arrest at that time, agreed to this request and was transported to the police station—without handcuffs—in a marked patrol vehicle. Upon arriving at the station, defendant was placed in an interview room (the door to which was open), advised of, executed and waived his *Miranda* rights and thereafter provided an incriminating oral statement to the police, which was recorded by a video camera. The detective testified, and a review of the video confirms, that defendant never asked for the questioning to cease and did not request an attorney until after his oral statement had been reduced to writing—a statement that he then refused to sign.

Contrary to defendant's present claim, the detective's testimony and the corresponding video recording establishes—based upon the totality of the circumstances—that defendant validly waived his *Miranda* rights and voluntarily gave an incriminating statement to the police (*see People v Zayas-Torres*, 143 AD3d 1176, 1178 [2016]; *People v Roseboro*, 127 AD3d 998, 999 [2015], *lv denied* 26 NY3d 934 [2015]). At the start of the interview, defendant was advised that he was "not under arrest" and that he was "not being charged with anything" at that time—prompting one of the interviewing detectives to explain, "That's why the door's open"; it was not until after defendant waived his *Miranda* rights and gave an incriminating statement that he was informed that he no longer was "free to leave." Accordingly, County Court properly concluded that defendant's statement indeed was voluntary.

Defendant's related claim—that County Court abused its discretion in denying his request to renew his suppression motion (made in the context of a motion in limine)—is equally unpersuasive. "A trial court may reopen a pretrial hearing if it 'is satisfied, upon a showing by the defendant, that additional pertinent facts have been discovered by the defendant which

he [or she] could not have discovered with reasonable diligence before the determination' of his [or her] pretrial application" (*People v Fuentes*, 53 NY2d 892, 894 [1981], quoting CPL 710.40 [4]; *accord People v Rivera*, 124 AD3d 1070, 1071 [2015], *lv denied* 26 NY3d 971 [2015]). Here, the proffered evidence consisted of an affidavit from defendant and one of the vehicle's other occupants attesting to the circumstances surrounding the traffic stop. Inasmuch as defendant's motion was premised upon "events to which defendant could have testified or otherwise brought to light at the initial *Huntley* hearing, we do not find that County Court abused its discretion in denying defendant's motion to reopen" (*People v Rivera*, 124 AD3d at 1071). Finally, to the extent that defendant argues that County Court "promised to hear additional proof" on this point and then refused to do so, the portion of the suppression hearing transcript upon which defendant relies refers to the admissibility of defendant's unsigned written statement and the video recording of his oral statement at trial—not the voluntariness thereof.

Turning to defendant's evidentiary claims, his challenge to the legal sufficiency of the evidence is unpreserved for our review. Defendant made only a general motion for a trial order of dismissal at the close of the People's case (*see People v Thorpe*, 141 AD3d 927, 928 [2016], *lv denied* 28 NY3d 1031 [2016]) and failed to renew that motion after he presented his proof (*see People v Lancaster*, 143 AD3d 1046, 1047 [2016], *lv denied* 28 NY3d 1147, 2017 NY Slip Op 97112[U] [Jan. 20, 2017]). Nevertheless, "our weight of the evidence review necessarily involves an evaluation of whether all elements of the charged crimes were proven beyond a reasonable doubt" (*People v Bullock*, 145 AD3d 1104, 1105 [2016] [internal quotation marks and citations omitted]).

"A person is guilty of robbery in the first degree when he [or she] forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he [or she] or another participant in the crime . . . [c]auses serious physical injury to any person who is not a participant in the crime . . . or . . . [i]s armed with a deadly weapon" (Penal Law § 160.15 [1], [2]). Similarly, a person is guilty of attempted robbery in the first degree "when, with intent to commit [such] crime, he [or she] engages in conduct which tends to effect the commission [there]of" (Penal Law § 110.00; *see* Penal Law § 160.15 [1], [2]). A person "forcibly steals" property when he or she "uses or threatens the immediate use of physical force upon another person" in order to either "overcom[e] resistance

to the taking of the property" or to "[c]ompel[ ] the owner of such property . . . to deliver up the property" (Penal Law § 160.00 [1], [2]), and "[t]he requisite mental state for robbery is the intent to permanently deprive the owner of that property" (*People v Lamont*, 25 NY3d 315, 319 [2015] [internal quotation marks and citation omitted]). A defendant's intent, which "is rarely proved by an explicit expression of culpability by the perpetrator" (*id.* at 318-319 [internal quotation marks and citations omitted]), "may be inferred from his [or her] actions and the surrounding circumstances" (*People v Molina*, 79 AD3d 1371, 1376 [2010], *lv denied* 16 NY3d 861 [2011]; *see People v Brown*, 100 AD3d 1035, 1036-1037 [2012], *lv denied* 20 NY3d 1009 [2013]), and the "competing inferences to be drawn regarding the defendant's intent, if not unreasonable, are within the exclusive domain of the finders of fact, not to be disturbed by [this Court]" (*People v Bueno*, 18 NY3d 160, 169 [2011] [internal quotation marks, brackets and citation omitted]). Finally, "[a] defendant may be held criminally liable for the conduct of another person when, acting with the mental culpability required for the commission thereof, the defendant solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct" (*People v Andrews*, 127 AD3d 1417, 1420 [2015] [internal quotation marks, brackets and citations omitted], *lv denied* 25 NY3d 1159 [2015]; *see* Penal Law § 20.00).

Deferring to the jury's credibility determinations, we find that defendant's conviction of two counts of robbery in the first degree, which was based upon defendant forcibly stealing Tremont's cell phone, is in accord with the weight of the evidence. As noted previously, Donnelly and Tremont each testified that defendant forcibly took Tremont's cell phone from her during the course of the robbery—at which time Collier was armed with a deadly weapon and Donnelly sustained serious physical injury. Although defendant offered a contrary version of the incident—claiming that Tremont stepped out of the vehicle of her own accord, that he had no idea what happened to the cell phone that was in her hand, that he never saw "the gun, period, at all" and that his sole involvement in the incident was to "defend" Collier, who was having "an argument" with Donnelly—the jury was free to reject such testimony, and defendant's intent to engage in the subject crimes may be inferred from his actions and the surrounding circumstances. Accordingly, we discern no basis upon which to disturb the jury's verdict in this regard.

We reach a similar conclusion relative to defendant's convic-

tion of two counts of attempted robbery in the first degree. According to the People's theory of the case, as amplified by their bill of particulars, the counts at issue were predicated upon defendant's attempted forcible taking of both Donnelly's house key and some money that was in the pocket of Donnelly's sweatshirt. Consistent with the course charted by the People in this regard, County Court charged the jury in the conjunctive as to these particular counts, stating that, in order to return a verdict of guilty, the jury needed to find that defendant "attempted to forcibly steal money and keys" from Donnelly. During its deliberations, the jury sought clarification on this point, asking, "Are money and keys linked in the charge? Do both need to be guilty." The People stood by the language set forth in their bill of particulars and, with counsels' acquiescence, County Court answered that inquiry in the affirmative. Defendant now contends that the record is devoid of proof that he attempted to take any money from Donnelly's sweatshirt and, therefore, his attempted robbery convictions cannot stand. We disagree.

The case law makes clear that the use of the conjunctive "and"—rather than the disjunctive "or"—in an indictment charges more than the People statutorily are required to prove. Therefore, despite the People's use of the word "and" in their bill of particulars here, the People were not required to prove that defendant attempted to forcibly steal two separate items in order to sustain the charged crimes (*see People v Flanders*, 25 NY3d 997, 999-1000 [2015]; *People v Charles*, 61 NY2d 321, 327-328 [1984]; *People v Sutera*, 107 AD3d 556, 558 [2013], *lv denied* 23 NY3d 968 [2014]; *People v Molloy*, 58 AD3d 404, 404 [2009], *lv denied* 12 NY3d 856 [2009]; *see also People v Frascone*, 271 AD2d 333, 333 [2000]). "The particular nature of the property stolen is not, by statute, a material element of the crime of robbery. Robbery merely requires the forcible stealing of property, and property is rather broadly defined as any money, personal property . . . or thing of value" (*People v Spann*, 56 NY2d 469, 473 [1982] [internal quotation marks and citations omitted]). Moreover, "[w]here an offense may be committed by doing any one of several things, the indictment may, in a single count, group them together and charge the defendant with having committed them all, and a conviction may be had on proof of the commission of any one of the things, without proof of the commission of the others" (*People v Charles*, 61 NY2d at 327-328 [internal quotation marks and citations omitted]; *accord People v Harris*, 129 AD3d 1522, 1525 [2015], *lv denied* 27 NY3d 998 [2016]).

Even assuming, without deciding, that the testimony ad-

duced at trial fell short of establishing that defendant attempted to forcibly steal money from Donnelly's sweatshirt pocket, there was ample proof from which the jury could—and did—conclude that defendant attempted to forcibly steal Donnelly's keys. Accordingly, contrary to defendant's assertion, his conviction of two counts of attempted robbery in the first degree is in accord with the weight of the evidence. Defendant's remaining contentions, including his claim that he was denied the effective assistance of counsel and that the sentence imposed was harsh and excessive, have been examined and found to be lacking in merit.

McCarthy, J.P., Lynch, Clark and Mulvey, JJ., concur. Ordered that the judgment is affirmed.