■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PETER J. MESKO, Appellant. [55 NYS3d 748]—

Devine, J. Appeal from a judgment of the County Court of Tompkins County (Cassidy, J.), rendered March 27, 2015, upon a verdict convicting defendant of the crimes of burglary in the second degree and sexual abuse in the first degree.

In the early morning hours of March 30, 2013, defendant was attending a house party in the City of Ithaca, Tompkins County. The victim's girlfriend resided at the house, and the two had retired to the girlfriend's bedroom in lieu of participating in the festivities. The two women awoke around 4:45 a.m. to find a man they later identified as defendant having climbed onto their bed and mounted the victim from behind. He was shoved off of the victim by her girlfriend and the women fled, with the victim's girlfriend briefly returning to take two photographs of defendant with her cell phone.

The victim reported the incident to authorities the same day and, following an investigation, defendant was charged in a three-count indictment with rape in the first degree, burglary in the second degree and sexual abuse in the first degree. The ensuing trial ended with the jury deadlocking on the rape count, but convicting defendant of burglary in the second degree and sexual abuse in the first degree. County Court sentenced defendant to an aggregate prison term of five years to be followed by postrelease supervision of three years. Defendant appeals, and we now affirm.

Defendant failed to renew his trial motion to dismiss at the close of all proof and, as such, his challenge to the legal sufficiency of the evidence presented is unpreserved (*see People v Newell*, 148 AD3d 1216, 1220 [2017]; *People v Chirse*, 146 AD3d 1031, 1031-1032 [2017], *lv denied* 29 NY3d 947 [2017]). Nevertheless, our weight of the evidence review includes an evaluation as to whether the elements of the crimes for which he was convicted were proved beyond a reasonable doubt (*see People v*

*Danielson*, 9 NY3d 342, 349 [2007]; *People v Newell*, 148 AD3d at 1220). Inasmuch as an acquittal would not have been unreasonable here, we will "weigh conflicting testimony, review any rational inferences that may be drawn from the evidence and evaluate the strength of such conclusions" in order to determine whether the jury was justified in reaching its verdict (*People v Danielson*, 9 NY3d at 348).

Defendant's "conviction of second degree burglary under Penal Law § 140.25 (2) requires proof that [he] entered or remained unlawfully in a dwelling" (*People v Cummings*, 16 NY3d 784, 785 [2011], *cert denied* 565 US 862 [2011]; *see* Penal Law § 140.00 [3]). A dwelling is a building "usually occupied by a person lodging therein at night" (Penal Law § 140.00 [3]) and, if "a building consists of two or more units separately secured or occupied, each unit shall be deemed both a separate building in itself and a part of the main building" (Penal Law § 140.00 [2]). Several individuals lived in the house where the incident occurred and, while defendant had been invited into the house, the victim and her girlfriend played no role in that invitation and were in bed by the time the revelers arrived. The bedroom door was closed all night except for the victim's girlfriend emerging at one point to tell the partiers to keep it down. The victim's girlfriend also testified that she considered her bedroom to be a private area—a point her roommates agreed upon—and that she had not given defendant permission to enter it. The jury could and did find from the foregoing that the bedroom was "a separate 'dwelling' within a 'building'," and "[t]he fact that the defendant was properly in the common areas of the house did not give him a license to enter" it (*People v Smith*, 144 AD2d 600, 601 [1988]; *see People v Clarke*, 185 AD2d 124, 125 [1992], *affd* 81 NY2d 777 [1993]).

The jury also credited the testimony of the victim and her girlfriend that it was defendant who entered the closed bedroom, climbed onto the back of the sleeping victim and made contact with the victim's vagina.* Despite defendant's efforts to portray his motive for entering the room to be innocent, his actions as described by the victim and her girlfriend readily permitted the inference that he intended to commit a crime

---

* The victim testified in no uncertain terms that defendant pressed against her vagina in a sexual manner, but the jury was apparently unable to credit her assertion that insertion had occurred so as to permit a conviction upon the first-degree rape charge. In that regard, the victim awoke in the middle of the assault and did not "realize exactly what was happening." The trial evidence also indicated, among other things, that defendant was in an awkward position to physically accomplish a rape and that there was no physical or DNA evidence establishing that a rape had occurred.

upon entering it so as to commit burglary in the second degree (*see* Penal Law § 140.25 [2]; *People v Judware*, 75 AD3d 841, 844 [2010], *lv denied* 15 NY3d 853 [2010]; *People v Brown*, 251 AD2d 694, 696 [1998], *lv denied* 92 NY2d 1029 [1998]). Those actions further permitted the inference that defendant subjected an unconscious and physically helpless victim to sexual contact in order to satisfy his own sexual desire so as to commit sexual abuse in the first degree (*see* Penal Law §§ 130.00 [3], [7]; 130.65 [2]; *People v Manning*, 81 AD3d 1181, 1182 [2011], *lv denied* 18 NY3d 959 [2012]; *People v Judware*, 75 AD3d at 844). Accordingly, "viewing such evidence in a neutral light and weighing the competing inferences that could be drawn therefrom, we are satisfied that the verdict as rendered is supported by the weight of the evidence" (*People v Judware*, 75 AD3d at 845; *see People v Wicks*, 73 AD3d 1233, 1234 [2010], *lv denied* 15 NY3d 857 [2010]).

Defendant next contends that prosecutorial misconduct deprived him of a fair trial. His contentions regarding the People's summation are largely unpreserved (*see People v Warrington*, 146 AD3d 1233, 1239 [2017]) and, in many cases, involve statements that "were fair comment on the evidence, permissible rhetorical comment, or responsive to the defense counsel's summation" (*People v Hatcher*, 130 AD3d 648, 649 [2015], *lv denied* 26 NY3d 968 [2015]; *see People v Shelton*, 307 AD2d 370, 371-372 [2003], *affd* 1 NY3d 614 [2004]). Defendant rightly complains that the People subjected a defense witness who had been at the party to inflammatory cross-examination regarding whether he believed it was "okay" for a man to enter a bedroom and force himself upon a sleeping woman (*see e.g. People v Hull*, 71 AD3d 1336, 1339 [2010]). That being said, a prosecutorial misstep of that sort, even when coupled with other sporadic and arguably improper actions by the prosecutor, is not the type of pervasive and flagrant misconduct that would warrant a new trial (*see People v Green*, 141 AD3d 1036, 1042 [2016], *lv denied* 28 NY3d 1072 [2016]; *People v Houck*, 101 AD3d 1239, 1240 [2012]).

Defendant further argues that he was plagued by the ineffective assistance of counsel but, "[t]o prevail on such a claim, defendant must demonstrate [both] that his attorney failed to provide meaningful representation . . . [and] the absence of strategic or other legitimate explanations for counsel's allegedly deficient conduct" (*People v Bullock*, 145 AD3d 1104, 1106 [2016] [internal quotation marks and citations omitted]; *see People v Clark*, 28 NY3d 556, 562-563 [2016]). Defendant attacks the performance of defense counsel in sundry respects

but, far from showing poor representation, the record reflects a coherent and well-executed strategy to cast doubt on a strong case supported by the testimony of the victim and an eyewitness that was supplemented by photographic evidence. The strategy did not result in defendant's acquittal, but did succeed to the extent that the jury deadlocked on the top count of the indictment. Perfection from counsel is not demanded and, "[v]iewing this case in its totality and as of the time of the representation, we are satisfied that defendant received meaningful representation" (*People v Molano*, 70 AD3d 1172, 1177 [2010], *lv denied* 15 NY3d 776 [2010]; *see People v Carver*, 27 NY3d 418, 422 [2016]).

Defendant's remaining arguments are not preserved, not persuasive, or both. The grand jury minutes do not, contrary to defendant's contention, disclose any "prosecutorial wrongdoing, fraudulent conduct or" other error prejudicial enough to potentially influence the grand jury's ultimate decision and warrant dismissal of the indictment (*People v Huston*, 88 NY2d 400, 409 [1996]; *see People v Boddie*, 126 AD3d 1129, 1130 [2015], *lv denied* 26 NY3d 1085 [2015]). Defendant's argument that the People obliquely referred to his pretrial silence is unpreserved (*see* CPL 470.05 [2]; *People v Abare*, 86 AD3d 803, 805 [2011], *lv denied* 19 NY3d 861 [2012]) and, in any event, unsupported by the record. The People were also free to cross-examine a defense witness as to why he did not give his account of the party to a police investigator despite being asked to do so and, in particular, whether that failure was connected to directions given by the captain of a sporting team counting him and defendant among its members to stay quiet (*see People v Garcia*, 4 AD3d 374, 374 [2004], *lv denied* 4 NY3d 763 [2005]). Lastly, County Court considered the appropriate factors in imposing sentence, and "we cannot conclude that County Court 'placed undue weight upon defendant's ill-advised decision to reject the very favorable plea bargain and proceed to trial' " (*People v Olson*, 110 AD3d 1373, 1378 [2013], *lv denied* 23 NY3d 1023 [2014], quoting *People v Morton*, 288 AD2d 557, 559 [2001], *lv denied* 97 NY2d 758 [2002], *cert denied* 537 US 860 [2002].

McCarthy, J.P., Egan Jr., Lynch and Clark, JJ., concur. Ordered that the judgment is affirmed.

