Egan Jr., J.
Appeal from a judgment of the County Court of Broome County (Smith, J.), rendered June 6, 2011, upon a verdict convicting defendant of the crimes of assault in the third degree, attempted assault in the second degree, criminal mischief in the third degree, menacing in the second degree, endangering the welfare of a child (two counts) and criminal mischief in the fourth degree.
On the evening of February 11, 2010, the victim was fixing dinner in the apartment that she shared with defendant, their eight-month-old son and her 51/2-year-old daughter. When defendant awoke from his nap, he discovered that the victim had moved his crack pipe and demanded to know its whereabouts. The victim “played . . . dumb,” at which point defendant became infuriated and smashed her cell phone. The victim then went in search of defendant’s cell phone in order to call the police. Defendant responded by snapping the cell phone in half and, while the victim was holding their infant son in her arms, *1127 proceeded to repeatedly strike the victim in the head and face with his fist.[1]
As the victim attempted to shield the child, she saw defendant lean over and grab what she described as a long, black rod-shaped object.[2] When defendant moved toward her, raised the object and threatened to kill her, the victim placed the child on the bed, at which point she was struck on the left side of her face “[h]ard enough to make [her] see stars and black out.” The victim came to on the floor “covered in blood,” at which point defendant either “kicked [her] a few times” or struck her on the side of her body with “something blunt.” After again threatening the victim, defendant packed his belongings and left the apartment via the front door, which the victim locked behind him. As the victim was trying to gather the children and seek assistance from a neighbor, she heard “loud pounding, knocking on the back door” of the apartment. When she went to investigate, the victim could hear defendant screaming and observed that the bottom panel of the door—previously undamaged—was now “punched out and broken.” At this point, the victim fled the apartment with her children and summoned help from passersby.
As a result of this incident, defendant was charged in a nine-count indictment with various crimes and, following a mistrial and a second jury trial, was convicted of assault in the third degree, attempted assault in the second degree, criminal mischief in the third degree, menacing in the second degree, endangering the welfare of a child (two counts) and criminal mischief in the fourth degree. Defendant thereafter was sentenced as a second felony offender to an aggregate prison term of 4 to 8 years. Defendant now appeals, contending that his convictions of attempted assault in the second degree and criminal mischief in the third degree are not supported by legally sufficient evidence and/or are against the weight of the evidence.
We affirm. Although defendant’s generalized motion to dismiss did not preserve his legal sufficiency claim with respect to the counts at issue, “our weight of the evidence review necessarily involves an evaluation of whether all elements of the *1128 charged crime [s] were proven beyond a reasonable doubt at trial” (People v Burch, 97 AD3d 987, 989 n 2 [2012] [internal quotation marks and citations omitted], lv denied 19 NY3d 1101 [2012]). In this regard, a defendant is guilty of attempted assault in the second degree when, “[w]ith intent to cause serious physical injury to another person” (Penal Law § 120.05 [1]), he or she “engages in conduct which tends to” cause such injury (Penal Law § 110.00; see People v Audi, 88 AD3d 1070, 1071 [2011], lv denied 18 NY3d 856 [2011]). A serious physical injury, in turn, is one that “creates a substantial risk of death, or which causes death or serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ” (Penal Law § 10.00 [10]). Where the defendant is charged with an attempt crime, he or she need not succeed in causing a serious physical injury; rather, all that is required is that the defendant “intended such injury and engaged in conduct directed at accomplishing that objective” (People v Audi, 88 AD3d at 1072; see People v Kitchings, 301 AD2d 749, 750 [2003], lv denied 99 NY2d 629 [2003]; People v Miller, 290 AD2d 814, 815 [2002], lv denied 98 NY2d 678 [2002]).
Here, the victim testified[3] that defendant repeatedly punched her in the face, struck her with sufficient force on the side of her head to cause her to lose consciousness, kicked or struck the side of her body with a blunt object and threatened to either kill or “beat the s[ ] out of [her].” Under these circumstances, we are satisfied—notwithstanding certain inconsistencies in the victim’s testimony—that the verdict is not against the weight of the evidence (see People v Audi, 88 AD3d at 1072; People v Bruno, 47 AD3d 1064, 1066 [2008], lv denied 10 NY3d 809 [2008]). Accordingly, defendant’s conviction of attempted assault in the second degree will not be disturbed.
Turning to the remaining charge, “[a] person is guilty of criminal mischief in the third degree when, with intent to damage property of another person, and having no right to do so nor any reasonable ground to believe that he or she has such right, he or she . . . damages property of another person in an amount exceeding [$250]” (Penal Law § 145.05 [2]). Damage to such property typically is “established by evidence of the reasonable cost of repairing the property” or, if the property cannot be repaired, “the replacement cost” thereof (People v Shannon, 57 AD3d 1016, 1016 [2008]).
*1129 Both the victim and her landlord testified that there was no damage to the rear door of the apartment prior to the incident in question, the victim testified that she knew that defendant was responsible for breaking the door because she could hear him screaming on the other side of it—and thereafter saw him reach through the broken panel—and photographs contained in the record depict the resulting damage to the door. Additionally, the landlord testified as to the cost of replacing the door and reframing the opening ($510), and the contractor’s invoice was admitted into evidence. Finally, when questioned by defense counsel as to whether she explored the possibility of simply repairing the door, the landlord testified that although her fiancé made a temporary repair on the night of the attack, “the whole frame was jilted” and the door no longer was capable of being locked, thereby necessitating replacement. In light of such proof, we cannot say that defendant’s conviction is against the weight of the evidence (cf. People v Hooks, 71 AD3d 1184, 1185-1186 [2010]). Defendant’s remaining arguments on this point, to the extent not specifically addressed, have been examined and found to be lacking in merit.
Mercure, J.E, Spain and McCarthy, JJ., concur. Ordered that the judgment is affirmed.

. Subsequent photographs show the victim’s blood spattered on the child’s face.

. This object was not recovered from the victim’s apartment until several days later, and the victim—at defendant’s urging and in an admitted attempt to obtain a reduction in the charges that would be pursued against defendant—subsequently provided a written statement wherein she denied that defendant struck her with anything other than his fist.

. The victim failed to appear at the second trial, prompting County Court to issue a material witness warrant. When the victim still could not be located, her testimony from the first trial was read to the jury.