■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CODY D. FANCHER, Appellant. [984 NYS2d 174]—

Garry, J. Appeal from a judgment of the Supreme Court (Lambert, J.), rendered June 9, 2011 in Delaware County, upon a verdict convicting defendant of the crimes of burglary in the second degree (two counts), burglary in the third degree (three counts), arson in the third degree (four counts), arson in the fourth degree, arson in the fifth degree, attempted arson in the fifth degree, criminal mischief in the third degree (three counts), reckless endangerment in the first degree, criminal trespass in the second degree, trespass and petit larceny.

Defendant and codefendant Donald J. Aitken were charged in a joint 21-count indictment with crimes stemming from their alleged involvement in multiple acts of vandalism, theft, burglary and arson in Delaware County in 2009, culminating in the destruction of a church by fire. Following a jury trial, defendant was convicted of burglary in the second degree (two counts), burglary in the third degree (three counts), arson in the third degree (four counts), arson in the fourth degree, arson in the fifth degree, attempted arson in the fifth degree, criminal

mischief in the third degree (three counts), reckless endangerment in the first degree, criminal trespass in the second degree, trespass and petit larceny.[1] Supreme Court sentenced defendant to an aggregate prison term of 23 to 69 years, which was later reduced pursuant to Penal Law § 70.30 to an aggregate term of 12 to 20 years. The court further ordered defendant to pay restitution in the aggregate amount of $814,771.48. Defendant appeals.

Defendant first argues that Supreme Court erred in denying his trial motion to dismiss the indictment count that charged him with arson in the second degree, contending that the evidence was legally insufficient to establish the requisite intent (*see* Penal Law § 150.15). However, following the denial of defendant's motion, the jury acquitted defendant upon this charge, which was based on damage to a foster home caused by the fire in the nearby church. Defendant was instead convicted of arson in the fourth degree as a lesser included offense, a charge that was given at defendant's request and did not require a showing of the element of intent that he had challenged (*see* CPL 300.50 [2]; Penal Law § 150.05 [1]). Defendant does not challenge the sufficiency of the evidence supporting his conviction for arson in the fourth degree; instead, in effect, he asks this Court to reverse this conviction on the ground that the evidence supporting the charge upon which he was acquitted was legally insufficient. Even if this argument had any merit, defendant waived it by requesting the lesser charge; he "ought not be allowed to take the benefit of the favorable charge and complain about it on appeal" (*People v Shaffer*, 66 NY2d 663, 665 [1985] [internal quotation marks and citation omitted]; *compare People v McDuffie*, 46 AD3d 1385, 1386 [2007], *lv denied* 10 NY3d 867 [2008]).

Defendant next challenges the legal sufficiency of the evidence establishing that he acted as Aitken's accomplice, and further contends, on this basis, that the verdict is contrary to the weight of the evidence.[2] Although defendant's legal sufficiency claims on this ground are unpreserved, we necessarily evaluate whether the evidence supports each element of the crimes in the course of reviewing the contention that the verdict is contrary to the weight of the evidence (*see People v Townsend*,

---

**1.** Aitken pleaded guilty to seven counts of arson in the third degree pursuant to a cooperation agreement with the People and testified against defendant at trial; his conviction was upheld upon appeal (*People v Aitken*, 101 AD3d 1383 [2012], *lv denied* 21 NY3d 1040 [2013]).

**2.** Defendant did not specifically limit this challenge to his arson and burglary convictions, but his appellate contentions are primarily directed to the evidence related to these crimes.

94 AD3d 1330, 1330 n 1 [2012], *lv denied* 19 NY3d 1105 [2012]). A defendant may be held criminally liable for the conduct of another person "when, acting with the mental culpability required for the commission thereof, [the defendant] solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct" (Penal Law § 20.00). The factfinder may infer mental culpability from the surrounding circumstances and the defendant's actions (*see People v Bush*, 75 AD3d 917, 918 [2010], *lv denied* 15 NY3d 919 [2010]; *People v Valderrama*, 285 AD2d 902, 903 [2001], *lv denied* 97 NY2d 659 [2001]). Defendant contends that the evidence reveals that Aitken, a volunteer firefighter who testified that he got "an adrenaline rush" from starting fires, was the ringleader who planned and committed the various crimes, while defendant was a passive follower who thought of Aitken as a big brother and—although he was present at the fire scenes—neither took any actions to help Aitken set them nor shared in a "community of purpose" (*People v Cabey*, 85 NY2d 417, 421 [1995] [internal quotation marks and citation omitted]; *see* Penal Law § 20.00).

Defendant claimed primary responsibility for several of the arsons in an early statement to police, but then recanted these admissions and testified at trial that he made them falsely in an attempt to protect Aitken. He further testified that Aitken planned and carried out the various arsons, and that defendant did not know beforehand about Aitken's plans and did not help him set the fires. However, he also acknowledged that, even after Aitken set fire to the first structure, defendant continued to accompany him into additional structures that Aitken broke into and burned, without refusing to join him or reporting the crimes to the police. Defendant testified that, on the night that the church was burned, he argued with Aitken to dissuade him from an alleged plan to burn down the house of an ex-girlfriend. When Aitken then announced that he would burn the church instead, defendant expressed reservations on religious grounds but nevertheless accompanied Aitken as he broke into the church and set fire to it, without further objection. Notably, defendant's testimony that he did not believe he could have stopped Aitken from setting fires if he had tried to do so was inconsistent with his testimony that he did, in fact, successfully object to Aitken's plan with regard to the ex-girlfriend's home. Finally, defendant testified that he threw away gas cans that were used in burning the church because he did not want to get caught with them; he later showed police where these cans were hidden.

Aitken contradicted defendant's testimony as to his principal

role in the arsons, testifying that it was defendant who proposed, planned and committed each of the crimes—which occurred in April, June, September and October 2009—while Aitken was the passive follower. The jury plainly did not credit all of this self-serving testimony, as it acquitted defendant of everything but trespass charges in relation to the April and June arsons despite his acknowledged presence at both scenes and Aitken's claims that defendant committed them.[3] Nevertheless, a jury is entitled to accept the testimony of a witness in part while rejecting the rest (see *People v Alteri*, 49 AD3d 918, 920 [2008]). Here, the jury could have credited Aitken's testimony, at least in part, regarding defendant's participation in the subsequent crimes—consisting of serial acts of vandalism and arson at three gravel banks and two residences on a single night in September, followed in October by the arson of the church and a barn—and refused to credit defendant's claims of continued ignorance and uninvolvement. We find that the totality of the evidence, viewed in a neutral light, supports the conclusion "that the crimes of which defendant was convicted represented the culmination of a continuum of events in which he continued to participate after the intentions of [Aitken] became manifest, so as to justify the jury's conclusion that he shared [Aitken's] criminal intent and aided in commission of the crimes" (*People v McDonald*, 257 AD2d 695, 696-697 [1999], *lv denied* 93 NY2d 876 [1999] [internal quotation marks and citation omitted]; *see People v Allah*, 71 NY2d 830, 832 [1988]; *People v Gage*, 259 AD2d 837, 839 [1999], *lv denied* 93 NY2d 924 [1999], *lv denied on reconsideration* 93 NY2d 970 [1999]).

Next, we reject defendant's contention that the verdicts convicting him of reckless endangerment in the first degree with respect to the persons in the foster home and arson in the third degree with respect to the fire in the church are repugnant. Such a claim requires this Court to examine the elements of each crime as they were charged to the jury to determine whether the defendant was "convicted of an offense containing an essential element that the jury has found the defendant did not commit" (*People v Faccio*, 33 AD3d 1041, 1043 [2006], *lv denied* 8 NY3d 845 [2007] [internal quotation marks and citations omitted]; *see People v Muhammad*, 17 NY3d 532, 539 [2011]). The jury was instructed that defendant could be convicted of reckless endangerment in the first degree if it found that he "recklessly engaged in conduct which created a grave

---

**3.** As revealed upon cross-examination, substantial aspects of Aitken's testimony were inconsistent with his previous sworn statements during his plea allocution.

risk of death to another person and that defendant did so under circumstances evincing a depraved indifference to human life," and was further instructed to find defendant guilty of arson in the third degree if it found that he "damaged a building . . . by starting a fire . . . and that defendant did so intentionally." The resulting guilty verdicts are not repugnant, as "[t]here is 'nothing inconsistent about one acting with an intent to cause property damage while at the same time evidencing a conscious disregard for the risk of death created by those same actions' " (*People v Hodges*, 66 AD3d 1228, 1232 [2009], *lv denied* 13 NY3d 939 [2010], quoting *People v McGrath*, 195 AD2d 831, 833 [1993], *lv denied* 82 NY2d 851 [1993]).

Defendant next contends that two of his convictions for criminal mischief in the third degree were not supported by legally sufficient evidence. The first of these contentions was not preserved, but if it had been, we would have found that an auto body shop owner's estimate of the cost of repairing a vandalized pickup truck provided legally sufficient evidence that the damage exceeded $250, even though the repairs were never performed (*see* Penal Law § 145.05 [2]; *People v Agron*, 106 AD3d 1126, 1128 [2013], *lv denied* 21 NY3d 1013 [2013]). We do find merit, however, in defendant's properly preserved challenge to his criminal mischief conviction under count 7 of the indictment, involving damage to a pay loader. Supreme Court refused to permit a witness who represented the company that owned the loader to testify, as his name had not been included on the People's witness list and jurors had not been asked about their acquaintance with him. As a result, the People offered no testimony as to the value of the damage to the loader, and the photographs they submitted, without more, were legally insufficient to establish that this value exceeded $250 (*see People v Beauvais*, 105 AD3d 1081, 1083 [2013]; *People v Civitello*, 287 AD2d 784, 786-787 [2001], *lv denied* 97 NY2d 703 [2002]). Further, the record is devoid of proof as to the loader's ownership. Thus, this conviction must be reversed (*compare People v Hooks*, 71 AD3d 1184, 1185-1186 [2010]).

Defendant also raises several challenges to the order of restitution. Even if defendant had preserved the first of these contentions, we would have found no merit whatsoever in his claim that Supreme Court should not have calculated the amount of the 5% designated surcharge at sentencing, but should have deferred this calculation until the restitution was "actually collected" (Penal Law § 60.27 [8]; *see People v Secore*, 102 AD3d 1057, 1059 [2013], *lv denied* 21 NY3d 1019 [2013]). We agree with defendant, however, that the amount of restitu-

tion payable to Delaware County for damage to the foster home should not have been included in calculating the surcharge, as Penal Law § 60.27 (10) provides that restitution to a municipality "shall not include a designated surcharge." Accordingly, the amount of the surcharge must be recalculated to exclude this amount as well as the amount based upon the reversed conviction for criminal mischief in the third degree—resulting, according to the restitution amounts specified in the record, in a 5% surcharge of $38,026.44.

Finally, defendant challenges the total amount of restitution, contending that it is harsh and excessive. Penal Law § 60.27 (5) (a) limits the amount of restitution that may ordinarily be ordered to $15,000 for a felony and $10,000 for offenses other than felonies, but also permits a sentencing court to impose additional amounts in its discretion, so long as "the amount in excess [is] limited to the return of the victim's property, including money, or the equivalent value thereof" (Penal Law § 60.27 [5] [b]). Here, Supreme Court imposed additional amounts for several of defendant's felony convictions, including $721,701.57 for the convictions related to the destruction of the church. All of these amounts complied with the statutory requirements in that they represented monetary losses that were actually suffered by the victims and/or their insurers. Nevertheless, defendant contends that the restitution is excessive because its magnitude is so great that it bears no realistic relationship to any amount that defendant—who was 17 years old at the time of the crimes, had a 9th grade education, had no job skills beyond farm labor and will be incarcerated for 12 to 20 years—is ever likely to be able to pay. While this argument has some persuasive force, it was not necessary to consider defendant's ability to pay at the time of sentencing, as the sentence imposed includes a significant period of incarceration (*see* Penal Law § 60.27 [1]; *People v Orminski*, 108 AD3d 864, 866 [2013], *lv denied* 22 NY3d 958 [2013]; *People v Heier*, 73 AD3d 1392, 1393 [2010], *lv denied* 15 NY3d 805 [2010]; *People v Henry*, 64 AD3d 804, 807 [2009], *lv denied* 13 NY3d 860 [2009]). We find no reason to disturb Supreme Court's discretionary restitution determination, noting that defendant may apply at any time for resentencing upon the ground that he is unable to pay (*see* CPL 420.10 [5]; *People v Henry*, 64 AD3d at 807).

Lahtinen, J.P., McCarthy and Egan Jr., JJ., concur. Ordered that the judgment is modified, on the law, by reversing defendant's conviction of criminal mischief in the third degree under count 7 of the indictment and by vacating so much thereof as directed defendant to pay a 5% surcharge on restitution to Del-

aware County; said count dismissed and the sentence and restitution imposed thereon vacated, with the surcharge reduced as provided herein; and, as so modified, affirmed.