*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  October 29, 2015                     105844
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                    Respondent,

        v                                    MEMORANDUM AND ORDER

ERIC LAUNDER,
                    Appellant.
_____

Calendar Date:   September 18, 2015

Before:  Garry, J.P., Rose, Lynch and Devine, JJ.

_____

        Timothy S. Brennan, Schenectady, for appellant.

        Robert M. Carney, District Attorney, Schenectady (Peter H. Willis of counsel), for respondent.

_____

Lynch, J.

        Appeal from a judgment of the County Court of Schenectady County (Milano, J.), rendered June 12, 2012, upon a verdict convicting defendant of the crimes of arson in the second degree, criminal mischief in the third degree (two counts) and criminal mischief in the fourth degree.

        Defendant was indicted for the crimes of arson in the second degree, criminal mischief in the third degree (two counts) and criminal mischief in the fourth degree for allegedly setting a fire to his neighbor's door and spray-painting several security cameras throughout his apartment building in the City of Schenectady, Schenectady County.  Following a jury trial defendant was convicted as charged and sentenced as a second felony offender to an aggregate prison term of 25 years with five

years of postrelease supervision.  Defendant appeals.

Having made only a general motion to dismiss the arson charge, defendant failed to preserve his argument that the arson verdict was not supported by legally sufficient evidence (see People v Hawkins, 11 NY3d 484, 492 [2008]).  Nevertheless, we evaluate the adequacy of the evidence as to each element of the crimes for which he was convicted as part of our weight of the evidence review (see People v Danielson, 9 NY3d 342, 348-349 [2007]; People v Santiago, 118 AD3d 1163, 1164 [2014], lv denied 24 NY3d 964 [2014]).  Given that an acquittal would not have been an unreasonable outcome, we must weigh "the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony while viewing the evidence in a neutral light and giving deference to the jury's credibility determinations" (People v Gibson, 121 AD3d 1416, 1418 [2014], lv denied 24 NY3d 1119 [2015] [internal quotation marks and citation omitted]).

For defendant to be found guilty of arson in the second degree, the People were required to prove that he "intentionally damage[d] a building . . . by starting a fire . . . when . . . another person who [was] not a participant in the crime [was] present in such building" and he knew "that fact or the circumstances [were] such as to render the presence of such a person therein a reasonable possibility" (Penal Law § 150.15). The fire occurred during the early morning hours of May 28, 2011. Defendant, who resided in apartment 12 and actually called 911 to report the fire, maintains that the People failed to prove that he set the fire.  As recounted in the testimony of Wanda Norris, who resided in apartment 8, and her niece, Shatina McCall, the event was prompted by an exchange earlier that evening between defendant and McCall.  At defendant's request, McCall went to his apartment having agreed to perform a sexual act for $20.  While defendant was in the shower, McCall took $20 and left the apartment, without having engaged in any sexual activity.  McCall and Norris then left the building.  Upon their return, they were confronted by defendant in the hallway near Norris' apartment. During the encounter, defendant threatened to retaliate.  When McCall and Norris went inside the apartment, they heard banging on the door, with defendant stating that he would use lighter

fluid to start a fire.  Later that morning, McCall and Norris heard the crackling sound of fire at their door.  They threw water on the fire and were able to exit the apartment.

Another neighbor, Shirley Lindsey, who described defendant as a good friend, testified that he came to her apartment early in the morning of May 28, 2011.  She described him as being angry with Norris and McCall over the $20.  According to Lindsey, before defendant left her apartment, he stated that "he ought to burn those bitches up" and "set their house on fire."  Defendant later returned to tell Lindsey that she should leave because the building was on fire, but that she needn't worry because "[i]t's just a little fire."  Three days later, she saw defendant headed toward the back of the building where the garbage cans were stored carrying a white plastic bag.  That same day, defendant admitted to Lindsey that he put a hooded sweatshirt on to disguise himself and started the fire using lighter fluid.  Defendant also admitted spray-painting all of the surveillance cameras in the building.

Mark Meeks, a special agent with the United States Department of Justice, Bureau of Alcohol, Firearms and Explosives who responded to the scene on May 28, 2011, testified that he interviewed defendant in his apartment because defendant had called 911 and helped evacuate others from the building.  Notably, defendant gave a written statement to Meeks in which he denied setting the fire, but acknowledged that he agreed to engage in a sexual act with McCall and that he later had an argument with Norris "about money and sex."  Meeks also testified about the surveillance footage, which was shown to the jury.  The footage implicated defendant as the individual wearing a hooded sweatshirt coming from and returning to apartment 12, who set the fire and spray-painted the camera near apartment 8.  James Penn, an investigator from the Schenectady Fire Department who also responded to the fire scene on May 28, 2011, testified that the remaining cameras were spray-painted sometime after the fire was set and before he returned to the scene on June 1, 2011.  Penn also testified that lighter fluid was utilized as an accelerant for the fire and that a can of lighter fluid and spray paint was found in a garbage can behind the building.  The spray paint was in a white plastic bag, as described by Lindsey, and was the same

silver color used to paint the cameras.

Defendant claims that McCall, Norris and Lindsey all lacked credibility for various reasons. These allegations were presented to the jury, which clearly credited their testimony (see People v Nicholas, 130 AD3d 1314, 1315 [2015]; People v Richards, 124 AD3d 1146, 1147 [2015], lv denied 25 NY3d 992 [2015]; People v Wingo, 103 AD3d 1036, 1037 [2013], lv denied 21 NY3d 1021 [2013]). Their testimony, coupled with the surveillance video, the physical evidence that an accelerant was utilized and defendant's own admissions, provides abundant support for the jury's arson verdict, which is not contrary to the weight of the evidence.

As for the criminal mischief in the third degree convictions, we find the verdict both legally sufficient and supported by the weight of the trial evidence. A charge of criminal mischief in the third degree requires proof that a defendant intentionally damaged property with a value exceeding $250 (see Penal Law § 145.05 [2]). At issue here is the value of the damage to the doorway area of apartment 8 and the damage to the security cameras spray-painted several days after the fire. Such damages are typically "established by evidence of the reasonable cost of repairing the property or, if the property cannot be repaired, the replacement cost thereof" (People v Beauvais, 105 AD3d 1081, 1083 [2013] [internal quotation marks and citation omitted]). Here, the property owners testified that the cost to repair the door was $350 and approximately $1,100 to replace the carpet. Photographs received into evidence reveal considerable burn damage to the door and carpeting. An employee for the company that installed the original cameras testified that the cost to actually replace the camera lenses was just under $700. Based on the foregoing, we find that the verdict for the criminal mischief convictions is supported by legally sufficient evidence and is in accord with the weight of the evidence (see People v Miranda, 119 AD3d 1421, 1422 [2014], lv denied 24 NY3d 1045 [2014]).

Defendant's remaining contentions are unavailing. While defendant maintains that his statement given to the police on May 28, 2011 should have been suppressed as involuntary, he raised no

such challenge in his posthearing memorandum of law, focusing instead on the June 1, 2011 statements. That said, despite defendant's claim of intoxication, Meeks testified that defendant was cooperative and did not exhibit any signs of intoxication (see People v Baugh, 101 AD3d 1359, 1360-1361 [2012], lv denied 21 NY3d 911 [2013]; People v Scott, 47 AD3d 1016, 1020 [2008], lv denied 10 NY3d 870 [2008]). County Court found Meeks credible and further determined that defendant was not in custody when this interview was conducted in his apartment. The record supports this determination. By failing to object to Lindsey's testimony, defendant's assertion that the statements he made to her should be suppressed have not been preserved for our review (see CPL 470.05 [2]; People v Edwards, 124 AD3d 988, 991 [2015], lv denied 25 NY3d 1201 [2015]). In any event, there is abundant evidence apart from defendant's admission that the charged crimes had been committed (see CPL 60.50; People v Santiago, 22 NY3d 740, 748-749 [2014]; People v Lipsky, 57 NY2d 560, 571 [1982]). In view of defendant's admissions to Lindsey, which constitute direct evidence (see People v Rosner, 67 NY2d 290, 295 [1986]), a circumstantial evidence charge was unnecessary (see People v Daddona, 81 NY2d 990, 992 [1993]; People v McRobbie, 97 AD3d 970, 972 [2012], lv denied 20 NY3d 934 [2012]; People v Wallace, 8 AD3d 753, 756 [2004], lv denied 3 NY3d 682 [2004]). Since there was no plausible basis to exclude either defendant's May 28, 2011 statement, or his admission to Lindsey, defendant's further claim of ineffective assistance of counsel based on counsel's failure to have this evidence excluded is without merit (see People v Caban, 5 NY3d 143, 152 [2005]; People v Clarke, 110 AD3d 1341, 1345 [2013], lv denied 22 NY3d 1197 [2014]).

Finally, defendant's claim that the sentence was harsh and excessive is unpersuasive (see People v Strong, 27 AD3d 1010, 1013 [2006], lv denied 7 NY3d 763 [2006]; People v Brown, 281 AD2d 700, 702 [2001], lv denied 96 NY2d 826 [2001]). While we recognize that the sentence imposed was the maximum (see Penal Law §§ 70.06 [3] [b]; [4] [b]; [6] [a]; 70.15 [1]; 145.00, 145.05, 150.15), the record confirms that defendant engaged in a deliberate plan to set an interior fire to an apartment building with several occupants, endangering their lives. As such, we perceive no abuse of discretion or extraordinary circumstances warranting a modification.

Garry, J.P., Rose and Devine, JJ., concur.


ORDERED that the judgment is affirmed.




                         ENTER:


                         Robert D. Mayberger
                         Clerk of the Court