■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v AMODENI M. A. ODOFIN, Appellant. [59 NYS3d 842]—

Egan Jr., J. Appeal from a judgment of the County Court of Broome County (Smith, J.), rendered May 15, 2015, convicting defendant following a nonjury trial of the crime of criminal mischief in the third degree.

In the early morning hours of January 8, 2013, the victim awoke to the sound of a loud noise in her apartment in the Village of Endicott, Broome County. Upon investigation, the victim discovered a large hole in her living room window, a dumbbell laying on the floor and water pouring out of her cracked 90-gallon fish tank. On March 19, 2013, after defendant, an acquaintance of the victim, made incriminating statements to two Endicott police officers in the parking lot of a local establishment known as Wingz, he was arrested. Thereafter, defendant was indicted for the crime of criminal mischief in the third degree. Following a nonjury trial, defendant was convicted as charged and sentenced to five years of probation and ordered to pay restitution in the amount of $2,452.31.

Defendant now argues that, although County Court, in a pretrial suppression ruling, precluded certain testimony because of the failure of the People to provide proper CPL 710.30 notice, it erred in permitting the introduction of those same statements at trial. Specifically, defendant contends that the court erred in admitting into evidence statements made (1) when he was initially approached and spoke with two police officers outside of Wingz, and (2) while he was being transported to the police station in a patrol vehicle. However, our review of the *Huntley* hearing transcript upon which defendant relies refers to the conversation between defendant and one of the officers during transport to the police station—not the testimony regarding the conversation between defendant and the officers in the parking lot outside of Wingz. While County Court may have inartfully expressed its suppression ruling,[1] it is clear that the court intended to only suppress defendant's statements made while inside the patrol vehicle. Defendant conceded that he was not in custody outside of Wingz and, prior to withdrawing his *Huntley* motion, stated that, with the exception of the "one piece of evidence" that was precluded, i.e., his statement in the patrol car, he "ha[d] notice of everything else that [the officer] testified to." Furthermore, a review of the trial transcript reveals that no testimony was introduced with respect to defendant's statements during his transportation to

---

1. "It is precluded. There was no notice. It's out. Any conversation in the bar between the bar and the Endicott police station is out. Okay."

the police station. As such, we find that defendant's claim on appeal in this regard is without merit (*see People v Davis*, 144 AD3d 1188, 1189 [2016], *lv denied* 28 NY3d 1144 [2017]; *People v Grant*, 96 AD3d 779, 780 [2012], *lv denied* 19 NY3d 1026 [2012]).

Turning to defendant's evidentiary claims, his challenge to the legal sufficiency of the evidence is not preserved for our review, as he did not renew his motion for a trial order of dismissal at the close of the People's proof on rebuttal (*see People v Davila*, 124 AD3d 1233, 1233 [2015]; *People v Garcia*, 79 AD3d 1248, 1250 [2010], *lv denied* 16 NY3d 797 [2011]). "Nevertheless, our weight of the evidence review necessarily involves an evaluation of whether all elements of the charged crime[ ] were proven beyond a reasonable doubt" (*People v Newell*, 148 AD3d 1216, 1220 [2017] [internal quotation marks and citations omitted], *lv denied* 29 NY3d 1035 [2017]; *see People v Mesko*, 150 AD3d 1412, 1412 [2017]). "A person is guilty of criminal mischief in the third degree when, with intent to damage property of another person, and having no right to do so nor any reasonable ground to believe that he or she has such right, he or she . . . damages property of another person in an amount exceeding [$250]" (Penal Law § 145.05 [2]). Furthermore, "[d]amage to such property typically is established by evidence of the reasonable cost of repairing the property or, if the property cannot be repaired, the replacement cost thereof" (*People v Agron*, 106 AD3d 1126, 1128 [2013] [internal quotation marks and citation omitted], *lv denied* 21 NY3d 1013 [2013]; *see People v Launder*, 132 AD3d 1151, 1153 [2015], *lv denied* 27 NY3d 1153 [2016]).

The victim testified that she had a short-term romantic relationship with defendant and, after he sent her "some erratic text messages on New Year's Eve," she ceased communication. The next day, defendant sent the victim text messages apologizing and explaining that he "was drunk and wasn't happy about not being able to talk or to see [the victim] for . . . New Year's and . . . felt like [he] was being ignored." The victim testified that, on January 8, 2013, she woke up around 6:30 a.m. to "a loud explosion erupting in [her] living room," where she found a hole in her window, her fish tank losing water and broken glass and a dumbbell weight—that she did not own—on her floor. Similarly, James Rossi, one of the responding officers, testified that he observed a cracked fish tank, which was located approximately 12 to 15 feet from the broken window, and a wet living room floor. Additionally, he recovered two dumbbells—an eight-pound dumbbell inside the living room and a

10-pound dumbbell on the ground outside of the apartment building.

The victim suggested to the police that defendant might be involved in the incident and, on March 19, 2013, Rossi discovered defendant's vehicle parked outside of Wingz during a routine patrol. Upon entering Wingz with another officer, Rossi located defendant inside the bar, who, upon request, agreed to step outside to talk. After Rossi made a representation that the police "had obtained fingerprints off of the dumbbells"[2] and asked "whose fingerprints might come back on the evidence," defendant "[s]agged his shoulders forward" and responded, "[M]ine." However, defendant testified that his response was a question rather than an admission. In addition to the foregoing, Rossi also testified that defendant continued to explain that he was intoxicated on the night of the incident and only after receiving the victim's text messages regarding the damages did he begin to recall parts of that night, including "having thrown a dumbbell through the [victim's] window." Although defendant offered a contrary version of his statement to the two police officers outside of Wingz, we defer to the factfinder's credibility determination (see People v Newell, 148 AD3d at 1221; People v MacDonald, 113 AD3d 966, 967 [2014]).

With respect to the property damage element of the crime, the victim testified that she had purchased the fish tank for $500 and that, at the time of the incident, it contained a total of 10 fish, all of whom died. The victim further testified that these fish included a Majestic Angel, purchased for $300, a Scott's Fairy Wrasse, purchased for $200, and a Purple Tang, purchased for $300. The cost of the fish tank and the fish were corroborated by one of the owners of a store that sold fish and aquariums. Additionally, the victim testified that her rugs, purchased for $100 and $200, were ruined from the outpour from the fish tank. Photographs received into evidence reveal the damage to the fish tank, window, area rugs and carpet, as well as the location of the propelled dumbbell. In light of such proof, we cannot say that the People failed to establish that damages exceed the statutory requirement of $250 (see People v Miranda, 119 AD3d 1421, 1421-1422 [2014], lv denied 24 NY3d 1045 [2014]; compare People v Beauvais, 105 AD3d 1081, 1083 [2013]). Accordingly, defendant's conviction of criminal mischief in the third degree is in accord with the weight of the evidence (see People v Agron, 106 AD3d at 1128-1129; People v Hooks, 71 AD3d 1184, 1185-1186 [2010]).

Defendant's remaining contentions, to the extent not specifi-

---

2. The police had in fact not obtained any fingerprints off the dumbbells.

cally addressed, have been examined and found to be lacking in merit.

Peters, P.J., Garry, Rose and Mulvey, JJ., concur. Ordered that the judgment is affirmed.