Aarons, J.
 

 Appeal from a judgment of the County Court of Saratoga County (Murphy III, J.), rendered December 7, 2015, upon a verdict convicting defendant of the crimes of offering a false instrument for filing in the first degree and attempted welfare fraud in the fifth degree.
 

 Defendant and her family received benefits from the Saratoga Department of Social Services (hereinafter DSS) under a Supplemental Nutrition Assistance Program (hereinafter SNAP). Following an investigation by DSS, defendant was charged by indictment with offering a false instrument for filing in the first degree and attempted welfare fraud in the fourth degree. A jury trial ensued and, after the close of all proof, County Court dismissed the charge of attempted welfare fraud in the fourth degree and submitted to the jury the lesser included offense of attempted welfare fraud in the fifth degree. Defendant was subsequently convicted of offering a false instrument for filing in the first degree and attempted welfare fraud in the fifth degree. County Court sentenced defendant, as a second felony offender, to an aggregate prison term of 2 to 4 years. Defendant appeals. We affirm.
 

 Defendant initially argues that the indictment was jurisdic-tionally defective because the People presented false evidence to the grand jury. We disagree. Approximately three weeks prior to the commencement of the trial, the People informed County Court that DSS calculated that defendant intended to receive an additional $594 in benefits over a three-month period as opposed to $1,073 as originally calculated and presented to the grand jury. As a consequence, the People moved to amend the second count of the indictment charging defendant with attempted welfare fraud in the fourth degree to attempted welfare fraud in the fifth degree.
 
 [1]
 
 Given that the People took immediate corrective action and there is no indication that the People “knowingly permitted any inaccurate testimony to stand” (People v Davis, 83 AD3d 1210, 1212 [2011], lv denied 17 NY3d 794 [2011]; see People v Bean, 66 AD3d 1386, 1386 [2009], lv denied 14 NY3d 769 [2010]), the exceptional remedy of dismissing the indictment is not warranted (see generally People v Miller, 110 AD3d 1150, 1150 [2013]).
 

 Defendant’s argument that the verdict was not supported by legally sufficient evidence is unpreserved for our review inasmuch as her motion to dismiss at trial did not address the specific grounds now being raised on appeal (see People v Novak, 148 AD3d 1352, 1353 [2017], lv denied 29 NY3d 1084 [2017]; People v Marquis A., 145 AD3d 61, 64 [2016]). Nevertheless, because defendant also argues that the verdict was against the weight of the evidence, we review the evidence as to each element of the crimes for which she was convicted (see People v Danielson, 9 NY3d 342, 349 [2007]; People v Launder, 132 AD3d 1151, 1151 [2015], lv denied 27 NY3d 1153 [2016]). The People do not dispute that an acquittal would not have been unreasonable and, therefore, we “weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony” (People v Ackerman, 141 AD3d 948, 949 [2016] [internal quotation marks and citations omitted], lv denied 28 NY3d 1181 [2017]; People v Bost, 139 AD3d 1317, 1320 [2016]).
 

 At trial, a DSS welfare examiner testified that SNAP eligibility was determined based upon various factors, including shelter and day care expenses, the number of individuals in a household and income. After qualifying for SNAP benefits, a party with income must recertify generally every six months and report changes, some of which may lead to increased benefits. If DSS received a change prior to when a party had to seek recertifcation, the change would take effect the next month. In July 2014, the DSS welfare examiner received a faxed invoice from defendant reflecting YMCA day care expenses of $153 per week for her two children covering a four-week period in the summer of 2014. As a consequence, the welfare examiner contacted the YMCA to verify these expenses. The YMCA billing coordinator testified that a search of the YMCA records pertaining to defendant’s children revealed that they were not registered for camp in 2014. The billing coordinator reviewed the 2014 invoice from DSS and stated that it did not “correlate with what [was] in our system.” The billing coordinator further testified that the payment identification number on the 2014 invoice corresponded to a receipt that had been processed in 2012 when defendant’s children attended the camp that summer. The DSS welfare examiner subsequently referred the matter to the fraud department.
 

 A DSS fraud investigator testified that when she went to defendant’s house, defendant invited her in and they initially discussed her household composition and income. The fraud investigator stated that when she asked defendant about the 2014 invoice submitted to DSS, defendant “admitted that she had printed off the receipt from the . . . YMCA and adjusted the information and submitted it to SNAP.”
 
 [2]
 
 The fraud investigator also stated that defendant explained to her that she did not believe that such submission “would make a difference whether or not she would receive more SNAP benefits.” According to the fraud investigator, defendant’s explanation did not make sense because recipients of SNAP benefits submit day care expenses for the purpose of receiving an increase in benefits. Indeed, the principal examiner for SNAP testified that in 2012, defendant’s benefits had increased based upon submitted day care expenses. Furthermore, the DSS welfare examiner and fraud investigator both testified that had the information reported on the 2014 invoice been accurate, defendant’s benefits would have increased.
 

 Viewing the foregoing evidence in a neutral light, the jury could rationally infer that defendant, with the intent to defraud DSS, submitted a forged receipt in order to increase her benefits. To the extent that defendant offered an explanation for submitting a forged receipt, the jury was entitled to reject such explanation (see People v Peters, 277 AD2d 512, 514 [2000]). According deference to the jury’s credibility determinations, we conclude that the verdict was supported by the weight of the evidence (see People v Hure, 16 AD3d 774, 775 [2005], lv denied 4 NY3d 854 [2005]; People v Swain, 309 AD2d 1173, 1174 [2003], lv denied 1 NY3d 581 [2003]; People v Cruz, 245 AD2d 963, 963 [1997], lv denied 91 NY2d 1006 [1998]).
 

 We reject defendant’s assertion that County Court should have suppressed her oral and written statements made to the DSS fraud investigator that she altered the 2014 invoice and submitted it to DSS. Contrary to defendant’s contention, the DSS fraud investigator was not acting as an agent of law enforcement officials when she interviewed defendant at her home inasmuch as there was no indication that the police directed, prompted or attended the interview (see People v Rodriguez, 135 AD3d 1181, 1184-1185 [2016], lv denied 28 NY3d 936 [2016]; People v Lewis, 83 AD3d 1206, 1208 [2011], lv denied 17 NY3d 797 [2011]; People v Whitmore, 12 AD3d 845, 847 [2004], lvs denied 4 NY3d 769, 892 [2005]). Furthermore, the DSS fraud investigator testified at the Huntley hearing that she did not have the authority to arrest defendant and that such decision rested with her supervisor and the District Attorney’s office. Nor does the record support defendant’s contention that her statements were a product of deceit or duress so as to render them involuntary (see People v Spencer, 16 AD3d 918, 919 [2005], lv denied 5 NY3d 770 [2005]; People v Bridges, 16 AD3d 911, 912 [2005], lv denied 4 NY3d 884 [2005]; People v Bentley, 106 AD2d 825, 826 [1984]). Accordingly, County Court properly denied defendant’s motion to suppress.
 

 We also reject defendant’s challenge to County Court’s Sandoval ruling. As part of their Sandoval proffer, the People sought to question defendant, if she testified, about three prior convictions, all of which were larceny related. Taking into account that these convictions bore upon defendant’s credibility and the fact that County Court precluded the People from questioning defendant about a 1995 conviction and limited the extent upon which the People could question defendant about the two remaining prior convictions, we find no abuse of discretion in County Court’s Sandoval ruling (see People v Iovino, 149 AD3d 1350, 1353 [2017], lv denied 30 NY3d 950 [Sept. 20, 2017]; People v Mould, 143 AD3d 1186, 1188 [2016], lv denied 28 NY3d 1187 [2017]; People v Capers, 129 AD3d 1313, 1317 [2015], lv denied 27 NY3d 994 [2016]).
 

 Defendant’s remaining arguments, including her challenge to County Court’s evidentiary ruling pertaining to the admission of photographs of her house into evidence and her challenge to the severity of the imposed sentence, have been examined and are determined to be without merit.
 

 Peters, P.J., Garry, Rose and Rumsey, JJ., concur.
 

 Ordered that the judgment is affirmed.
 

 [1]
 

 . Welfare fraud in the fourth degree requires the People to establish that a person commit “a fraudulent welfare act and thereby takes or obtains public assistance benefits, and . . . the value of the public assistance benefits exceeds [$1,000]” (Penal Law § 158.10). The elements of welfare fraud in the fifth degree are the same except that there is no monetary threshold (see Penal Law § 158.05).
 

 [2]
 

 . The fraud investigator prepared a written statement embodying what defendant told her, which defendant subsequently reviewed and initialed.